Kem Thompson Frost, Chief Justice
In this oil and gas case we consider whether the trial court erred in granting summary judgment and declaring that a purported exception and reservation in an assignment of oil, gas, and mineral leases is of no legal force or effect. We conclude that the trial court erred in granting summary judgment and in making this declaration and that the trial court also erred in granting another summary-judgment motion that was based on the first summary judgment. We conclude that the trial court did not err in denying a cross-motion for summary judgment to the extent the movants sought declaratory relief as a matter of law in favor of the party unto whom the purported exception and reservation was made. Because our disposition on appeal substantially affects the trial court's judgment, we reverse the trial court's awards of attorney's fees made under the Declaratory Judgments Act. After reversing the summary judgments and attorney's fee-awards, we remand the case to the trial court.
I. FACTUAL AND PROCEDURAL BACKGROUND
Effective July 1, 1999, appellant Armour Pipe Line Company, Eugene C. Cashman, Eugene C. Cashman d/b/a Cashman Oil & Gas and d/b/a Cashman Oil & Gas Company, and several other entities (collectively the "Assignors") executed an assignment (the "First Assignment") in which they:
(1) assigned to appellee Sandel Energy, Inc. "any and all of Assignors' right, title and interest in and to [99 Oil, Gas, and Mineral Leases described in Exhibits A and A-1 to the First Assignment] (the "Leases"),
(2) assigned to Sandel "any and all of Assignors' right, title and interest in [13 wells described in Exhibit B to the First Assignment],"
(3) excepted and reserved unto Eugene Cashman and his respective heirs, administrators, successors, and assigns a specified overriding royalty interest in 23 of the Leases-those listed in Exhibit A to the First Assignment, and
(4) purported to except and reserve unto Armour and its respective heirs, administrators, successors, and assigns a specified overriding royalty interest in the oil, gas, and other minerals produced from 76 of the Leases-those listed in Exhibit A-1 to the First Assignment (hereinafter the "Royalty Interest").
The Assignors did not make any general warranty of title, but made only a special warranty of title against any person claiming title by, through, or under the Assignors, *458 and limited to "the purchase price of said lease and said wells, herein."
In a second assignment, effective July 1, 2000, Armour purported to assign to Sandel the Royalty Interest as this interest pertained to production from the existing wells described on Exhibit B to the 2000 assignment (the "Second Assignment"). In the Second Assignment the parties recite that the assigned interest "does not pertain to production attributable to these leases from any new wells drilled in the future at different locations."
In 2011, Sandel, on its own behalf and on behalf of certain "partners" executed a farmout agreement with appellee CML Exploration, LLC. CML then drilled several successful wells on leases subject to the Royalty Interest. CML concluded that the purported exception and reservation of the Royalty Interest unto Armour was "ineffective." Recognizing that a dispute likely would arise as to the validity of the Royalty Interest, CML held in suspense the funds that would be subject to the Royalty Interest if it were valid.
Appellees/plaintiffs Sandel Energy, Inc., Double H Investments, L.P., Laura Sandel Gilbreath, Kerco Asset Management, LLC, Successor in Interest to Kerri A. Coleman d/b/a KERCO, Eddie Thompson and Edna Ann Tepe Thompson, Co-Trustees of the Edgar Carmen Thompson Family Trust B, Bill and Lynn Mizell, Joe B. Sandel, and Ricky W. Sledge (collectively the "Sandel Parties") filed suit against Armour and CML. The Sandel Parties sought a declaratory judgment that any purported reservation in the First Assignment in favor of Armour is of no legal force or effect and is void. In the alternative, the Sandel Parties sought a declaratory judgment that to the extent Armour had a valid claim to the Royalty Interest, all such rights were extinguished and the Royalty Interest is of no further legal force or effect, resulting in Armour having no claim to the Royalty Interest. The Sandel Parties sought the alternative declaration based on Armour's forfeiture, in February 2003, of Armour's certificate of authority to do business in Texas.
Armour answered and asserted counterclaims or crossclaims seeking (1) a declaratory judgment that Armour is entitled to the Royalty Interest and that the suspended or withheld royalty payments should be paid to Armour; (2) a money judgment based on a breach-of-contract claim against Sandel Energy; and (3) a money judgment based on money-had-and-received claims against the Sandel Parties and CML. CML asserted claims seeking interpleader relief and attorney's fees.
Appellants/intervenors Mary Patricia Cashman, Joan Cashman, Noreen Cashman, Cathleen Cashman, and Caroline DeChant (collectively the "Cashman Sisters") filed a petition in intervention as counterplaintiffs asserting claims seeking: (1) a declaratory judgment that Armour is entitled to the Royalty Interest and that the suspended or withheld royalty payments should be paid to Armour; (2) in the alternative, a declaratory judgment that the Cashman Sisters are entitled to equal shares of the Royalty Interest as successors in interest to all of the Assignors and as Armour's shareholders; and (3) a money judgment based on money-had-and-received claims against the Sandel Parties and CML.
The Sandel Parties filed a summary-judgment motion and asserted various grounds allegedly entitling them to a declaration as a matter of law regarding the Royalty Interest (the "First Motion"). Armour responded in opposition to the motion. The trial court signed an interlocutory order granting the First Motion and declaring that the Royalty Interest "is of no legal force nor effect, resulting in [Armour *459 ], its successors and assigns having no claim to any rights otherwise evidenced by [the Royalty]." On the same day, the trial court also granted CML's request for interpleader relief as to the funds attributable to the Royalty Interest. The trial court ordered CML to pay into the court's registry the disputed funds, which at that time exceeded $1,500,000, and the trial court ordered CML to continue to pay into the court's registry every month any funds attributable to the disputed interest. The trial court released and discharged CML from further liability to the Sandel Parties and Armour for payments made in compliance with the court's order, and the trial court awarded CML attorney's fees.
CML later filed a summary-judgment motion asserting the sole ground that the claims against CML by Armour and the Cashman Sisters fail as a matter of law based on the trial court's summary-judgment order in which the court granted the First Motion ("CML's Motion"). The trial court granted CML's Motion and ordered that Armour and the Cashman Sisters take nothing by their claims against CML.
Armour and the Cashman Sisters (collectively the "Cashman Parties") filed a joint motion for partial summary judgment, seeking to have the trial court reconsider its order granting the First Motion and grant declaratory relief in Armour's favor. The Cashman Parties also requested (1) certain declaratory relief if Armour is was not entitled to the Royalty because of the temporary absence of Armour's certificate of authority to do business in Texas, and (2) other declaratory relief if the First Assignment did not effectively convey and reserve the Royalty unto Armour. The Sandel Parties filed a second motion seeking summary judgment as to the Cashman Sisters' claims (the "Second Motion"). The trial court denied the Cashman Parties' motion, granted the Second Motion, and reaffirmed the court's prior order granting the First Motion.
The Sandel Parties filed a third summary-judgment motion seeking judgment as a matter of law on their request for attorney's fees under the Declaratory Judgments Act. The trial court granted this motion, awarding the Sandel Parties recovery against the Cashman Parties jointly and severally for trial attorney's fees as well as making conditional awards of appellate attorney's fees.
The trial court rendered a final judgment, in which the court incorporated and attached its prior summary-judgment orders.
II. ISSUES AND ANALYSIS
Armour has appealed the trial court's judgment and filed a brief, asserting that the trial court erred in granting the First Motion and in denying Armour's summary-judgment motion. The Cashman Sisters also have appealed and filed a separate brief, asserting that the trial court erred in granting summary judgment in the Sandel Parties' favor on their declaratory-judgment claims.
In a traditional motion for summary judgment, if the movant's motion and summary-judgment evidence facially establish its right to judgment as a matter of law, the burden shifts to the nonmovant to raise a genuine, material fact issue sufficient to defeat summary judgment. M.D. Anderson Hosp. & Tumor Inst. v. Willrich , 28 S.W.3d 22, 23 (Tex. 2000). In reviewing a no-evidence summary judgment, we ascertain whether the nonmovant pointed out summary-judgment evidence raising a genuine issue of fact as to the essential elements attacked in the no-evidence motion. Johnson v. Brewer & Pritchard, P.C. , 73 S.W.3d 193, 206-08 (Tex. 2002). In our de novo review of a *460 trial court's summary judgment, we consider all the evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. Mack Trucks, Inc. v. Tamez , 206 S.W.3d 572, 582 (Tex. 2006). The evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary-judgment evidence. Goodyear Tire & Rubber Co. v. Mayes , 236 S.W.3d 754, 755 (Tex. 2007).
A. Did the trial court err in granting the First Motion?
On appeal Armour challenges the trial court's granting of the First Motion, which Armour asserts was entirely predicated on Texas Business Organizations Code section 11.359. See Tex. Bus. Orgs. Code Ann § 11.359 (West, Westlaw through 2017 1st C.S.). Armour asserts that because the trial court did not specify the grounds on which it granted summary judgment, this court must determine if any ground advanced in the First Motion is meritorious. In the First Motion, the Sandel Parties sought an interlocutory judgment against Armour based on four grounds:
(1) All claims and rights that Armour had based on the Royalty were extinguished by operation of law under Texas Business Organizations Code section 11.359(a) when Armour's certificate of authority to do business in Texas was forfeited in February 2003 and Armour did not have it reinstated within three years. Under this ground, the Sandel Parties rely on sections 9.202, 9.203, and 11.359(a) of the Texas Business Organizations Code and section 171.309 of the Texas Tax Code. The Sandel Parties assert that the reinstatement of Armour's certificate of authority to do business in Texas in 2014 did not revive Armour's extinguished interests.
(2) Because all claims and rights that Armour had based on the Royalty have been extinguished, Armour has no justiciable interest and lacks standing and capacity to assert any right to the Royalty.
(3) Because all claims and rights that Armour had based on the Royalty have been extinguished, all rights in and to the Royalty vested in Sandel Energy and its assignees.
(4) Because of the above three grounds, Armour's estoppel-by-deed arguments are moot.
We may affirm the trial court's granting of the First Motion only on one of these four grounds. See Lindsey Construction v. AutoNation Financial Servs. , 541 S.W.3d 355, 361-62, 2017 WL 6045568, at *4 (Tex. App.-Houston [14th Dist.] Dec. 7, 2017, no pet.) (holding that appellate court may not affirm the trial court's granting of a summary-judgment motion based on a ground the movant did not expressly present in the motion).
The record reflects that in February 2003, the Texas Secretary of State ordered Armour's certificate of authority to do business in Texas forfeited under Texas Tax Code section 171.309. See Tex. Tax Code Ann. § 171.309 (West, Westlaw through 2017 1st C.S.). Though the Sandel Parties admit that Armour's certificate of authority to do business in Texas was reinstated in 2014, they asserted in the first summary-judgment ground that all claims and rights that Armour had based on the Royalty were extinguished by operation of law under Texas Business Organizations Code section 11.359(a) when Armour's certificate of authority to do business in Texas was not reinstated within three years of its forfeiture in February 2003. See Tex. Bus. Orgs. Code Ann § 11.359(a).
*461 To determine whether the trial court erred in granting the First Motion we must interpret and apply various statutes. We review the trial court's interpretation of applicable statutes de novo. See Johnson v. City of Fort Worth , 774 S.W.2d 653, 655-56 (Tex. 1989). In construing a statute, our objective is to determine and give effect to the Legislature's intent. See Nat'l Liab. & Fire Ins. Co. v. Allen , 15 S.W.3d 525, 527 (Tex. 2000). If possible, we must ascertain that intent from the language the Legislature used in the statute and not look to extraneous matters for an intent the statute does not state. Id. If the meaning of the statutory language is unambiguous, we adopt the interpretation supported by the plain meaning of the provision's words. St. Luke's Episcopal Hosp. v. Agbor , 952 S.W.2d 503, 505 (Tex. 1997). We must not engage in forced or strained construction; instead, we must yield to the plain sense of the words the Legislature chose. See ids="11902537" index="11" url="https://cite.case.law/sw2d/952/503/#p505">id.
Subject to an exception that does not apply to this case, Texas Business Organizations Code section 11.359(a) provides that "an existing claim by or against a terminated filing entity is extinguished unless an action or proceeding is brought on the claim not later than the third anniversary of the date of termination of the entity." Tex. Bus. Orgs. Code Ann § 11.359(a). We presume for the sake of argument that Armour's alleged ownership of the Royalty is an "existing claim by ... a terminated filing entity" for the purposes of section 11.359(a). Even under this presumption, the claim is not extinguished under section 11.359(a) unless Armour is a "terminated filing entity" under this section. See id.
The Business Organizations Code defines "[t]erminated filing entity," as used in section 11.359, as "a terminated entity that is a filing entity." See Tex. Bus. Orgs. Code Ann § 11.001(5) (West, Westlaw through 2017 1st C.S.) (emphasis added). For purposes of this definition, the Business Organizations Code defines "terminated entity" as "a domestic entity the existence of which has been: (A) terminated in a manner authorized or required by this code, unless the entity has been reinstated in the manner provided by this code; or (B) forfeited pursuant to the Tax Code, unless the forfeiture has been set aside." Tex. Bus. Orgs. Code Ann § 11.001(4) (emphasis added). For purposes of the definition of "terminated entity," the Business Organizations Code defines "domestic entity" as "an organization formed under or the internal affairs of which are governed by [the Texas Business Organizations Code]." Tex. Bus. Orgs. Code Ann § 1.002(18) (West, Westlaw through 2017 1st C.S.). The record reflects, and the Sandel Parties concede, that Armour is a Delaware corporation. Delaware law, rather than the Texas Business Organizations Code, governs Armour's internal affairs. See Tex. Bus. Orgs. Code Ann. § 1.102 (West, Westlaw through 2017 1st C.S.). Armour was not formed under the Texas Business Organizations Code. See id. So, under the unambiguous language of the applicable statutes, Armour is not a domestic entity as a matter of law, and therefore, Armour is not a terminated entity or a terminated filing entity as a matter of law.[1] ibr.US_Case_Law.Schema.Case_Body:v1">Seeindex="15" url="https://cite.case.law/citations/?q=Tex.%20Code%20Ann.%20%C2%A7%201.102"> id. §§ 11.001(4), 11.001(5), 1.002(18), 1.102. Because Armour is not a "terminated filing entity," none of its claims may be extinguished under section 11.359. Tex. Bus. Orgs. Code Ann § 11.359(a).
*462 The Sandel Parties do not assert that Armour is a domestic entity, a terminated entity, or a terminated filing entity under the definitions of each term in the Business Organizations Code. Instead, the Sandel Parties assert that Business Organizations Code section 9.202 requires that Armour be treated as if it were a domestic entity, a terminated entity, or a terminated filing entity for the purposes of section 11.359. The parties have not cited and research has not revealed any case addressing this issue.
In section 9.202, the Texas Legislature provides that "[a] foreign nonfiling entity or a foreign filing entity registered under this chapter enjoys the same but no greater rights and privileges as the domestic entity to which it most closely corresponds." Tex. Bus. Orgs. Code Ann § 9.202 (West, Westlaw through 2017 1st C.S.). In section 9.202, the Texas Legislature did not specifically say that foreign entities are subject to the provisions of the Business Organizations Code that, by their own terms, apply only to domestic entities. See id. If section 9.202 were to mean that foreign entities are subject to the termination of their existing claims under section 11.359, then this general statute ( section 9.202 ) would conflict with the specific statute ( section 11.359 ). See id. §§ 9.202, 11.359. In this scenario, we would construe these statutes, if possible, to give effect to both. See Tex. Gov't Code Ann. § 311.026(a) (West, Westlaw through 2017 1st C.S.). For example, we could construe section 9.202 as giving a registered foreign entity the same rights and privileges as the domestic entity to which it most closely corresponds, and we could construe section 11.359 as providing for a penalty not addressed by section 9.202's language regarding rights and privileges. See Tex. Bus. Orgs. Code §§ 9.202, 11.359.
Even presuming that these two statutes irreconcilably conflict, we still would give effect to the language of section 11.359 as the specific statute that prevails as an exception to the general statute because the general statute was not the later enactment and the Legislature did not manifestly intend that the general statute prevail. See Tex. Gov't Code Ann. § 311.026(a) ; Tex. Bus. Orgs. Code §§ 9.202, 11.359. Thus, we conclude that section 9.202 does not require that Armour be treated as if it were a domestic entity, a terminated entity, or a terminated filing entity for the purposes of section 11.359.
The Sandel Parties also assert that Business Organizations Code section 9.203 requires that Armour be treated as if it were a domestic entity, a terminated entity, or a terminated filing entity for the purposes of section 11.359. The parties have not cited and research has not revealed any case addressing this issue. In section 9.203, the Texas Legislature provides that "[s]ubject to this code and other laws of this state ... a foreign entity ... is subject to the same duties, restrictions, penalties, and liabilities imposed on a domestic entity to which it most closely corresponds." Tex. Bus. Orgs. Code Ann § 9.203 (West, Westlaw through 2017 1st C.S.) (emphasis added). In section 9.203, the Texas Legislature did not specifically say that foreign entities are subject to the provisions of the Business Organizations Code that, by their own terms, apply only to domestic entities. See id. Under the unambiguous language of section 9.203, the provisions of that statute are subject to the other sections of the Business Organizations Code, which includes section 11.359. See id. Thus, if section 9.203 otherwise would mean that foreign entities are subject to the termination of their existing claims under section 11.359, then section 11.359 would prevail. See id. In any event, if these two statutes were to irreconcilably *463 conflict, we still would give effect to the language of section 11.359 as the specific statute that prevails as an exception to the general statute, section 9.203, because the general statute was not the later enactment and the Legislature did not manifestly intend that the general statute prevail. See Tex. Gov't Code Ann. § 311.026(a) ; Tex. Bus. Orgs. Code §§ 9.203, 11.359. So, we conclude that section 9.203 does not require that Armour be treated as if it were a domestic entity, a terminated entity, or a terminated filing entity for the purposes of section 11.359.
As the Sandel Parties did in their summary-judgment motion, on appeal, they continue to rely on sections 9.202, 9.203, and 11.359 of the Business Organizations Code. Nonetheless, in response to certain arguments by Armour not necessary to address in this opinion, the Sandel Parties assert on appeal that the Texas Business Organizations Code did not apply to Armour until January 1, 2010, and that the provisions of the Texas Business Corporations Act governed "at all pertinent times surrounding the forfeiture of [Armour's] rights in Texas and the extinguishment of its rights."See Tex. Bus. Orgs. Code §§ 402.001 - 402.005 (West, Westlaw through 2017 1st C.S.) (addressing applicability of Business Organizations Code and phase-out of Business Corporations Act). The Sandel Parties then cite article 7.12 of the Texas Business Corporations Act, the predecessor statute to section 11.359. See Act of May 7, 1993, 73rd Leg., R.S., ch. 215, § 2.19, 1993 Tex. Gen. Laws 418, 457-58 (sections D and F of former Tex. Bus. Corp. Act art. 7.12 ); Act of May 25, 1991, 72nd Leg., R.S., ch. 901, § 39, 1991 Tex. Gen. Laws 3161, 3188-89 (sections A, B, C, and E of former Tex. Bus. Corp. Act art. 7.12 ). To the extent the Sandel Parties argue that we should affirm the trial court's granting of the First Motion based on former article 7.12 of the Texas Business Corporations Act, we may not do so because the Sandel Parties did not expressly present any ground based on this statute in the First Motion. See Lindsey Construction , 541 S.W.3d at 362-63, 2017 WL 6045568, at *4. After the summary-judgment hearing but before the trial court ruled on the First Motion, the Sandel Parties submitted a brief in which they asserted that the Texas Business Corporations Act was the operative statute for the trial court to consider with respect to the First Motion. But, the Sandel Parties cannot raise summary-judgment grounds in a brief in support of their summary-judgment motion. See Lewis v. Nolan , 105 S.W.3d 185, 189 (Tex. App.-Houston [14th Dist.] 2003, pet. denied).
If the Business Organizations Code does not apply to the alleged extinguishment of all claims and rights that Armour had based on the Royalty, then the Sandel Parties' arguments based on the Business Organizations Code would fail for this reason alone. See Tex. Bus. Orgs. Code §§ 402.001 - 402.005. Nonetheless, even if the Business Organizations Code did not apply to Armour until January 1, 2010, the Secretary of State did not reinstate Armour's certificate of authority to do business in Texas until 2014, more than three years later. Thus, we presume for the purposes of our analysis that the Business Organizations Code applies. In any event, under the unambiguous text of former article 7.12,[2] the extinguishment of an existing claim only operated against a "dissolved corporation,"
*464 a term whose unambiguous definition did not include Armour or any foreign corporation on the basis that its certificate of authority to do business in Texas was forfeited under Tax Code section 171.309.[3] See Act of May 7, 1993, 1993 Tex. Gen. Laws at 457-58.
The Sandel Parties cite cases involving Texas corporations, but they cite no case in which a court applies section 11.359 to a non-Texas entity. The Sandel Parties assert that the federal district court in Construtodo S.A. de C.V. v. Conficasa Holdings, Inc . applied this doctrine to a Delaware corporation, but a careful reading of this case shows otherwise. See H-12-3026, 2014 WL 427114, at *3-6 (S.D. Tex. Jan. 31, 2014). In explaining why the district court was dismissing the case for lack of subject-matter jurisdiction, the court described the parties' arguments. See itation index="30" url="https://cite.case.law/citations/?q=2014%20WL%20427114">id. The court explained an argument by the defendants, in which they claimed that a Delaware corporation's failure to have its corporate privileges reinstated within three years of the forfeiture of the corporation's certificate of authority to do business in Texas resulted in the extinguishment of the company's claims. See id. at *3-4. The court noted that the defendants "correctly argue that the tax forfeiture statute and the three-year limited survival statute together extinguish all claims by or against a dissolved corporation unless an action or proceeding on the claims is brought within three years of the dissolution." Id. at *3. But, the district court did not hold that the Delaware corporation was a "dissolved corporation."[4] Though the court described the defendants' argument that the Delaware corporation's claims had been extinguished, the court did not hold that these claims had been extinguished.[5] See id. at *3-6. The court concluded it lacked jurisdiction without addressing the extinguishment issue; instead, the court relied on other factors, including the Delaware corporation's loss of its right to file suit under Tax Code section 171.252. See Tex. Tax Code Ann. § 171.252 (West, Westlaw through 2017 1st C.S.); Construtodo S.A. de C.V. , 2014 WL 427114, at *3, *6. Thus, the Construtodo court did not apply section 11.359 or its predecessor statute to a non-Texas entity. See Construtodo S.A. de C.V. , 2014 WL 427114, at *3-6.
*465 The parties have not cited and research has not revealed any case addressing whether section 11.359 applies to foreign entities. Under the unambiguous language of section 11.359 and the statutes relating to the definition of the term "terminated filing entity" used in that statute, we conclude that as a matter of law section 11.359 cannot operate to terminate any claims of a foreign entity such as Armour. See Tex. Bus. Orgs. Code Ann. §§ 11.001(4), 11.001(5), 1.002(18), 1.102, 11.359. Therefore, the trial court erred in granting the First Motion on the ground that all claims and rights that Armour had based on the Royalty were extinguished by operation of law under section 11.359(a) when the Secretary of State forfeited Armour's certificate of authority to do business in Texas and Armour did not have the certificate reinstated within three years. See itation index="35" url="https://cite.case.law/citations/?q=Tex.%20Code%20Ann.%20%C2%A7%C2%A7%2011.001">id.
The Sandel Parties predicated all of the remaining summary-judgment grounds in the First Motion on the extinguishment of Armour's claims under section 11.359. Because Armour's claims were not extinguished under section 11.359, the trial court erred to the extent it granted the First Motion on any of the other grounds in the First Motion. See itation index="36" url="https://cite.case.law/citations/?q=Tex.%20Code%20Ann.%20%C2%A7%C2%A7%2011.001">id.
On appeal, the Sandel Parties argue that we should uphold the summary judgment against Armour based on the "stranger to title" doctrine, under which, according to the Sandel Parties, an exception or reservation in favor of a purported assignor of real property who, in fact, is a "stranger to title" owning no title to the property conveyed, conveys no title to this stranger. We may not affirm the trial court's granting of a summary-judgment motion based on a ground the movant did not expressly present in the summary-judgment motion. Lindsey Construction , 541 S.W.3d at 361-62, 2017 WL 6045568, at *4 ; Dardas v. Fleming, Hovenkamp & Grayson, P.C. , 194 S.W.3d 603, 615-16 (Tex. App.-Houston [14th Dist.] 2006, pet. denied). Armour asserts that the Sandel Parties did not assert this ground in the First Motion. In response, the Sandel Parties assert that they raised their stranger-to-title argument in the First Motion by challenging Armour's title to the property conveyed in the Assignment and by challenging Armour's standing. We have reviewed the First Motion, and we conclude that the Sandel Parties did not expressly present their stranger-to-title argument in the First Motion; therefore, we may not affirm the trial court's summary judgment based on the stranger-to-title argument. See id.
The Sandel Parties argue that Armour raised the stranger-to-title argument in its summary-judgment response, and that the Sandel Parties then raised this ground in their summary-judgment reply. But, we may not affirm a summary judgment based on a ground the movants raised in their reply but not in their motion. See Yeske v. Piazza del Arte, Inc. , 513 S.W.3d 652, 677 (Tex. App.-Houston [14th Dist.] 2016, no pet.) ; Cain v. Progressive Cnty. Mut. Ins. , 448 S.W.3d 550, 552 (Tex. App.-Houston [14th Dist.] 2014, no pet.) ; PAS, Inc. v. Engel , 350 S.W.3d 602, 609 (Tex. App.-Houston [14th Dist.] 2011, no pet.). The Sandel Parties also argue that they raised the stranger-to-title ground by their extensive argument at the summary-judgment hearing, but asserting a ground at the summary-judgment hearing does not remedy the movant's failure to expressly present the ground in the summary-judgment motion. See Nat'l City Bank of Indiana v. Ortiz , 401 S.W.3d 867, 882 (Tex. App.-Houston [14th Dist.] 2013, pet. denied). The Sandel Parties invoke the trial-by-consent doctrine. A summary-judgment *466 movant may try an issue raised in the nonmovant's response by consent and thus waive the movant's objection that the nonmovant was required to raise the issue in the nonmovant's pleading as well as in its summary-judgment response. See Via Net v. TIG Ins. Co. , 211 S.W.3d 310, 313 (Tex. 2006) (per curiam). But, a non-movant's failure to object to the movant raising an argument somewhere other than in the summary-judgment motion does not allow an appellate court to affirm the summary judgment based on that argument if the movant failed to expressly present the argument in the summary-judgment motion. See Nat'l City Bank of Indiana , 401 S.W.3d at 882.
We may not affirm the trial court's granting of the First Motion on the stranger-to-title ground because the Sandel Parties did not expressly present that ground in the First Motion. As discussed above, the trial court erred in granting the First Motion on each of the grounds the Sandel Parties expressly presented in the First Motion. Thus, we conclude the trial court erred in granting the First Motion and declaring that the Royalty Interest "is of no legal force nor effect, resulting in [Armour], its successors and assigns having no claim to any rights otherwise evidenced by [the Royalty]."
B. Did the trial court err in granting CML's Motion?
The trial court granted CML's Motion, in which CML asserted a single ground that the claims asserted against CML by the Cashman Parties fail as a matter of law based on the trial court's summary-judgment order granting the First Motion. The trial court granted CML's Motion and ordered that Armour and the Cashman Sisters take nothing by their claims against CML.
On appeal, Armour argues that because section 11.359 was the lynchpin for the Sandel Parties' argument that Armour's property rights were extinguished, the trial court should not have granted the First Motion if section 11.359 does not apply. Armour also asserts that if section 11.359 does not apply, then the trial court should not have granted CML's Motion because in that motion CML relied on the First Motion. Liberally construing Armour's appellate brief, we conclude that Armour has sufficiently briefed a challenge to the trial court's granting of CML's Motion on the ground that CML's Motion was based on the trial court's summary-judgment order granting the First Motion and therefore, the trial court erred in granting CML's Motion if the trial court erred in granting the First Motion. See Perry v. Cohen, 272 S.W.3d 585, 588 (Tex. 2008) (holding that court of appeals erred by concluding appellant failed to assign error as to special-exceptions order because, under a liberal construction of appellant's brief, appellant challenged this order given that appellant presented argument challenging the basis of this order, though appellant did not expressly challenge the order).
In the CML motion, CML asserted a single ground against Armour's claims and the Cashman Sisters' claims. In their appellate brief, the Cashman Sisters adopt by reference Armour's opening brief. See Tex. R. App. P. 9.7 (stating that "[a]ny party may ... adopt by reference all or any part of a brief ... filed in an appellate court by another party in the same case"); Hunter Buildings & Mfg., L.P. v. MBI Global, L.L.C. , 436 S.W.3d 9, 14 (Tex. App.-Houston [14th Dist.] 2014, pet. denied). Thus, the Cashman Sisters have adopted (1) Armour's challenges to the trial court's order granting the First Motion, and (2) Armour's challenge to the trial court's granting of CML's Motion on the ground that CML's Motion was based *467 on the trial court's summary-judgment order granting the First Motion, and therefore the trial court erred in granting CML's Motion if the trial court erred in granting the First Motion. See Tex. R. App. P. 9.7 ; Hunter Buildings and Mfg., L.P. , 436 S.W.3d at 14.
Because the trial court erred in granting the First Motion and because the sole ground for CML's Motion was the trial court's order granting the First Motion, the trial court erred in granting CML's Motion and in ordering that the Cashman Parties take nothing as to their claims against CML.
C. Did the trial court err in denying the Cashman Parties' summary-judgment motion?
The trial court denied the Cashman Parties' cross-motion for summary judgment. On appeal, the Cashman Parties seek a rendition of judgment in their favor based on this cross-motion. In the cross-motion, the Cashman Parties sought a traditional summary judgment declaring that Armour is the rightful owner of the part of the Royalty that was not assigned to Sandel Energy in 2000 and that Armour is entitled to all the benefits of that property right, including the payment of proceeds from minerals produced from the applicable wells in accordance with the terms of the reservations set out in the First Assignment and the Second Assignment.
In the First Assignment, the Assignors purported to except and reserve unto Armour and its respective heirs, administrators, successors, and assigns the Royalty, which is a specified overriding royalty interest in the oil, gas, and other minerals produced from 76 of the Leases-those listed in Exhibit A-1 to the First Assignment. For Armour to be entitled to payment of proceeds from minerals produced from these 76 leases, the Assignors must have owned an interest in the 76 leases at the time of the First Assignment. The summary-judgment evidence does not conclusively prove that the Assignors owned an interest in any of these 76 leases.
In their cross-motion and summary-judgment evidence, the Cashman Parties sought to prove that, as part of the 1999 transaction involving the First Assignment, Armour released certain mortgages, deeds of trust, and net profits royalty interests that covered all 76 leases. Though the Cashman Parties proffered conclusory affidavit testimony from Mary Cashman and Richard Vetter in support of this proposition, such conclusory statements are insufficient to support a summary judgment. See Hall v. Bean, 416 S.W.3d 490, 494 (Tex. App.-Houston [14th Dist.] 2013, no pet.). The summary-judgment evidence does not conclusively prove that released mortgages, deeds of trust, and net profits royalty interests covered the 76 leases. Under the applicable standard of review, the summary-judgment evidence does not conclusively prove that Armour is the rightful owner of the part of the Royalty that was not assigned to Sandel Energy in 2000 and that Armour is entitled to all the benefits of that property right, including the payment of proceeds from minerals produced from the applicable wells in accordance with the terms of the reservations set out in the First Assignment and the Second Assignment. See KIT Projects, LLC v. PLT P'ship, 479 S.W.3d 519, 528 (Tex. App.-Houston 14th Dist.] 2015, no pet.). Thus, the trial court did not err in denying the Cashman Parties' cross-motion to the extent they sought declaratory relief as a matter of law in favor of Armour.
In the cross-motion the Cashman Sisters also requested (1) certain declaratory relief if Armour is not entitled to the Royalty because of the temporary absence of its *468 certificate of authority to do business in Texas, and (2) other declaratory relief if the First Assignment did not effectively convey and reserve the Royalty unto Armour. The trial court erred in granting the First Motion, and, at this juncture, it has not been determined that (1) Armour is not entitled to the Royalty because of the temporary absence of its certificate of authority to do business in Texas, or (2) the First Assignment did not effectively convey and reserve the Royalty unto Armour. Because the alternative relief the Cashman Sisters sought was based on conditions that have not yet occurred, we need not and do not address whether the Cashman Sisters are entitled to the alternative relief they requested in the cross-motion.
III. CONCLUSION
The trial court erred in granting the First Motion and in declaring that the Royalty Interest "is of no legal force nor effect, resulting in [Armour], its successors and assigns having no claim to any rights otherwise evidenced by [the Royalty]." Therefore, we reverse the trial court's order granting this relief.
Because the sole ground for CML's Motion was the trial court's order granting the First Motion, the trial court erred in granting CML's Motion and in ordering that the Cashman Parties take nothing as to their claims against CML. Therefore, we reverse the trial court's order granting this relief.
The trial court did not err in denying the Cashman Parties' cross-motion to the extent they sought declaratory relief as a matter of law in favor of Armour. Therefore, we affirm this part of the trial court's judgment.
In the primary declaratory-judgment claim in their petition in intervention, the Cashman Sisters seek a declaration that Armour owns the part of the Royalty that was not assigned to Sandel Energy in 2000. If Armour is not entitled to the Royalty because of the forfeiture of its certificate of authority to do business in Texas from 2003 through 2014, then the Cashman Sisters seek a declaration that, as shareholders of Armour, they own the part of the Royalty that was not assigned to Sandel Energy in 2000. If the First Assignment did not effectively convey and reserve the Royalty unto Armour, then the Cashman Sisters, as alleged successors in interest to all of the Assignors in the First Assignment, seek a declaration that they own the part of the Royalty that was not assigned to Sandel Energy in 2000.
We are reversing the trial court's order granting the First Motion and affirming the trial court's order denying the Cashman Parties' cross-motion to the extent they sought declaratory relief as a matter of law in favor of Armour. Therefore, it has not yet been determined whether Armour owns the part of the Royalty that was not assigned to Sandel Energy in 2000. If it is ultimately determined that Armour owns this interest, then the Cashman Sisters' alternative claims will be moot. At this juncture, we need not and do not address whether the trial court erred in granting the Second Motion or whether the Cashman Sisters are entitled to the alternative relief they requested in the cross-motion.
Because our disposition on appeal substantially affects the trial court's judgment, reversal of the trial court's attorney's-fees awards in the Sandel Parties' favor is warranted so that on remand the trial court can address what reasonable and necessary attorney's fees, if any, should be awarded under the Declaratory Judgments Act in light of all the circumstances, including the relief granted in the trial court's judgment on remand. See *469 Allstate Cnty. Mut. Ins. Co. v. Wootton , 494 S.W.3d 825, 839 (Tex. App.-Houston [14th Dist.] 2016, pet. denied). Therefore, we reverse all of the attorney's-fee awards to the Sandel Parties in the trial court's judgment, as well as the trial court's orders granting the First Motion and granting CML's Motion, and we remand the case to the trial court for further proceedings consistent with this opinion.

The Sandel Parties state in their appellate briefing that Armour is a "foreign entity" rather than a "domestic entity."

Under former article 7.12(C), the Texas Legislature provided that "[a]n existing claim by or against a dissolved corporation shall be extinguished unless an action or proceeding on such existing claim is brought before the expiration of the three-year period following the date of dissolution." Act of May 25, 1991, 1991 Tex. Gen. Laws at 3188.

Under former article 7.12(F), the term "dissolved corporation" was defined as follows:
"a corporation (a) that was voluntarily dissolved by the issuance of a certificate of dissolution by the Secretary of State and was not issued a certificate of revocation of dissolution pursuant to Section C of Article 6.05 of this Act, (b) that was involuntarily dissolved by the Secretary of State and was not reinstated pursuant to Section E of Article 7.01 of this Act, (c) that was dissolved by decree of a court when the court has not liquidated all the assets and business of the corporation as provided in this Act, (d) that was dissolved by the expiration of its period of duration and has not revived its existence as provided in this Act, or (e) whose charter was forfeited pursuant to the Tax Code , unless the forfeiture has been set aside."
Act of May 7, 1993, 1993 Tex. Gen. Laws at 457-58 (emphasis added). Former article 7.12(F) did not include in this definition a corporation whose certificate of authority had been forfeited under the Tax Code. See id.

See footnote 3, addressing former article 7.12(F)'s definition of "dissolved corporation."

For example, the Construtodo court summarized this argument by the defendants as follows:
In sum, Defendants argue that Plaintiff Construtodo, S.A. de C.V. d/b/a Construmex is not the real party in interest and must be dismissed. Any claim by the real party in interest, Construtodo, Inc., has been extinguished. Therefore the Court lacks subject matter jurisdiction and must dismiss all claims against Defendants.
Construtodo S.A. de C.V. , 2014 WL 427114, at *4.