**Reversed and Remanded and Majority and Concurring Opinions filed October 12, 2021.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-19-00883-CV

---

### MARGUERITE TAMASY, Appellant

### V.

### LONE STAR COLLEGE SYSTEM, Appellee

---

**On Appeal from the 127th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2015-71050**

---

### MAJORITY OPINION

Appellant Marguerite Tamasy filed suit against appellee Lone Star College System ("Lone Star") for breach of her employment contract, alleging that Lone Star failed to make contributions to her designated pension plan. In what we construe as a single issue, Tamasy argues that the trial court erred by granting summary judgment in favor of Lone Star. We reverse and remand.

## I. BACKGROUND

According to Tamasy, she began working for the University of Texas at Arlington ("UTA") as a part-time employee in 1996. At that time, she enrolled in the Texas Retirement System ("TRS") and began making contributions to a TRS retirement account. In 1998, she became a full-time faculty member at UTA, opted out of the TRS, elected to participate in the Optional Retirement Program ("ORP"), and began making contributions to an ORP account.[1]

In 2001, she became a full-time Assistant Professor of Nursing at Lone Star. Tamasy was employed by Lone Star from 2001 to 2015. Each year, Tamasy signed a new one-year employment contract. From 2001 to 2008, her contracts were essentially identical, stating in pertinent part that:

> This employment shall be on a full-time basis with employees working full time for the District as required by the Laws and Regulations of the State of Texas and the regulations of the District. Employees shall enjoy such privileges as Texas State Laws and Regulations and Policies that the District shall provide.

In 2009, a new employment contract was utilized. The relevant portion states, "Employee shall also have those benefits, which are set forth in detail by System policy and laws of the State of Texas."

From 2010 to 2015, the employment contract evolved again and contained the following language concerning benefits:

> In addition to other terms as stipulated in this Contract, Employee shall be extended those benefits which are set forth in detail by System policy and the State of Texas as may be amended. These include but are not limited to medical coverage, dental coverage,

---

[1] The ORP allows individually defined contribution plans as an incentive for faculty members of state supported institutions of higher education. *See* Tex. Gov't Code Ann. § 830.001. Under the ORP, employers have the responsibility to forward all contributions, including those made by the employee, by the employer, and by the state to a company selected by the employee to administer their ORP account. *See id.* §§ 830.201(a), (b), 830.2015, 830.202.

vision coverage, life and dependent life coverage, voluntary accidental and dismemberment (AD&D) coverage, long and short term disability coverage, Texflex account access, cobra coverage and retirement program participation in TRS, ORP, TIAA-CREF and/or TDA, when applicable. Employee is also eligible to receive paid leave for preapproved absences and pay for approved holidays.

Tamasy alleges that when she began working for Lone Star in 2001, she informed both the TRS and Lone Star that she was vested, and had elected to participate, in ORP in place of TRS. Nevertheless, it is undisputed that from 2001 to 2015, instead of sending Tamasy's contributions to ORP, Lone Star forwarded Tamasy's retirement contributions, which were deducted from her compensation, to TRS, who erroneously received and administered the funds for fourteen years.

According to Tamasy, she first became aware of the situation when she sought to retire in 2015 and sent an online request for an estimate of her retirement benefits. She was informed that Lone Star had not made a single deposit into her ORP account and that instead, Lone Star had been forwarding her contributions to TRS. Lone Star issued Tamasy a check for $61,917.60, which only represented Tamasy's personal contributions. TRS maintained that according to the then-existing statutes, it had no authority to refund contributions made by Lone Star or any lost interest on those contributions. Through her attorney, Tamasy returned the check and filed suit against TRS and Lone Star. TRS filed a plea to the jurisdiction, which the trial court denied.

While the suit was pending, the Texas Government Code was amended to allow the TRS to release funds held in error. *See* Act of May 26, 2017, 85th Leg., R.S., ch. 186, § 2 (codified at Tex. Gov't Code Ann. § 830.108). Under this statute, the Legislature created a procedure for restoring the employee's participation in the correct program, transferring credit for employer contributions, and the payment of interest at an annual rate of four percent. *See id.*

3

On December 7, 2018, Lone Star sent Tamasy a communication titled "ORP/TRS Employer Certification for Correction Under Texas Government Code § 830.108." On August 30, 2018, Lone Star made payments to Tamasy's designated ORP Trustee of $31,296.27 as the state contribution portion of her entitlement, and $20,546.61 as the required interest payment. In November 2018, Tamasy dismissed TRS from her suit, but maintained her claim against Lone Star. In her second amended petition, Tamasy alleged breach of contract as her sole cause of action, asserting that by failing to properly forward her contributions to the ORP account, Lone Star breached their employment contracts and caused "a substantial loss to Tamasy." As a result of the alleged breach, Tamasy sought actual damages and attorney's fees.

On May 2, 2019, Lone Star filed a combined traditional and no-evidence motion for summary judgment. In its motion, Lone Star argued that: 1) there was no evidence that Lone Star "has any independent contractual obligation to provide benefits to Tamasy"; 2) it is not a guarantor for the State of Texas; and 3) § 830.108 was intended to be an exclusive remedy for employees like Tamasy, and thus, she is not authorized to recover actual damages or attorney's fees. On May 24, 2019, Tamasy filed a response.

On September 30, 2019, after conducting a hearing on the motion, the trial court granted the motion for summary judgment without specifying the grounds for the ruling. This appeal was timely filed on October 29, 2019.

## II. MOTION FOR SUMMARY JUDGMENT

In her sole issue, Tamasy argues that the trial court erred by granting Lone Star's hybrid motion for summary judgment. More specifically, she argues that Lone Star breached its enforceable obligation to continue her ORP participation and that § 830.108 was not intended to be an exclusive remedy. Alternatively, she

4

argues that if § 830.108 was intended to be an exclusive remedy, then it retroactively deprives her of substantial rights.

## A. STANDARD OF REVIEW

When a party moves for summary judgment on both traditional and no-evidence grounds, we address the no-evidence grounds first. *See Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004); *see also Carnegie Homes & Constr. LLC v. Turk*, No. 14-16-00260-CV, 2017 WL 3927290, at *3 (Tex. App.—Houston [14th Dist.] Sept. 7, 2017, no pet.) (mem. op.).

In a no-evidence motion for summary judgment, the movant represents that there is no evidence of one or more essential elements of the claims for which the nonmovant bears the burden of proof at trial. Tex. R. Civ. P. 166a(i). The burden then shifts to the nonmovant to present evidence raising a genuine issue of material fact as to the elements specified in the motion. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). Thus, in reviewing a no-evidence summary judgment, we ascertain whether the nonmovant pointed out summary-judgment evidence raising a genuine fact issue as to the essential elements attacked in the no-evidence motion. *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 206–08 (Tex. 2002).

In our de novo review of a trial court's summary judgment, we consider all the evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *Tamez*, 206 S.W.3d at 582. The evidence raises a genuine fact issue if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary-judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007) (per curiam).

The movant for traditional summary judgment has the burden of showing

that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009); *see also Carnegie Homes & Constr.*, 2017 WL 3927290, at \*3. When, as in this case, the order granting summary judgment does not specify the grounds upon which the trial court relied, we must affirm the summary judgment if any of the independent summary-judgment grounds is meritorious. *See FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000); *Schultz on Behalf of Schultz v. Lone Star Rd. Constr., Ltd.*, 593 S.W.3d 750, 754–55 (Tex. App.—Houston [14th Dist.] 2019, pet. denied).

## B.   APPLICABLE LAW

"The elements of a breach-of-contract action are (1) the existence of a valid contract, (2) performance or tendered performance by the plaintiff, (3) breach of the contract by the defendant, and (4) damages sustained by the plaintiff as a result of the breach." *See Mays v. Pierce*, 203 S.W.3d 564, 575 (Tex. App.—Houston [14th Dist.] 2006, pet. denied). "A breach occurs when a party fails or refuses to do something he has promised to do." *Id.*

The first element of a breach of contract claim is to establish the existence of a valid, enforceable contract between the parties. *See id.*; *see also First Tech Fed. Credit Union v. Fisher*, No. 14-18-00140-CV, 2020 WL 830052, at \*6 (Tex. App.—Houston [14th Dist.] Feb. 20, 2020, pet. denied) (mem. op.). "For an agreement to be enforceable, there must be a meeting of the minds with respect to its subject matter and essential terms." *C3 Commc'ns, LLC v. Gigabit Techs., LLC*, No. 14-19-00730-CV, 2021 WL 2965456, at \*6 (Tex. App.—Houston [14th Dist.] July 15, 2021, no pet. h.) (mem. op.) (citing *Parker Drilling Co. v. Romfor Supply Co.*, 316 S.W.3d 68, 72 (Tex. App.—Houston [14th Dist.] 2010, pet. denied)). Additionally, "[t]o be enforceable, a contract must address all of its essential and

6

material terms with 'a reasonable degree of certainty and definiteness.'" *Fischer v. CTMI, L.L.C.*, 479 S.W.3d 231, 237 (Tex. 2016) (quoting *Pace Corp. v. Jackson*, 284 S.W.2d 340, 345 (Tex. 1955)); *see also C3 Commc'ns*, 2021 WL 2965456, at *6. "[A] contract must at least be sufficiently definite to confirm that both parties actually intended to be contractually bound." *Fischer*, 479 S.W.3d at 237. Even where the parties' intent to agree is clear, the agreement's terms must be sufficiently definite to permit the court to understand the parties' obligations and give an appropriate remedy for a breach. *Id.*; *C3 Commc'ns*, 2021 WL 2965456, at *6.

An agreement must be definite with respect to those terms that are "material and essential" to the parties' agreement. *Fischer*, 479 S.W.3d at 237. Material and essential terms are those that parties would reasonably regard as vitally important elements of their bargain and are determined on a case-by-case basis. *Id.*; *C3 Commc'ns*, 2021 WL 2965456, at *6.

"Our primary concern in construing a contract is to ascertain and give effect to the intentions the parties objectively manifested in that instrument." *Carnegie Homes & Constr.*, 2017 WL 3927290, at *10 (citing *Fiess v. State Farm Lloyds,* 202 S.W.3d 744, 746 (Tex. 2006) ("As with any other contract, the parties' intent is governed by what they said, not by what they *intended* to say but did not.")). Contract terms are given their plain, ordinary, and generally accepted meanings unless the contract itself shows them to be used in a technical or different sense. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex. 2005); *see also Carnegie Homes & Constr.*, 2017 WL 3927290, at *10. In determining the meaning of contract terms, we also may consider the context of the circumstances existing at the time the contract was executed and the particular business activity sought to be served. *See Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.,* 940 S.W.2d 587, 589 (Tex. 1996); *Reilly v. Rangers Mgmt., Inc.,* 727 S.W.2d 527,

7

530 (Tex. 1987).

If we can give the contract a definite or certain legal meaning, then it is unambiguous and we construe it as a matter of law. *Willis v. Donnelly,* 199 S.W.3d 262, 275 (Tex. 2006); *J.M. Davidson, Inc. v. Webster,* 128 S.W.3d 223, 229 (Tex. 2003). If, on the other hand, the contract is subject to two or more reasonable interpretations, then it is ambiguous, creating a fact issue as to the parties' intent. *Columbia Gas Transmission Corp.,* 940 S.W.2d at 589. Whether a contract is ambiguous is a question of law. *Id.*

## C. TAMASY HAS RAISED AN ISSUE OF MATERIAL FACT REGARDING HER BREACH OF CONTRACT CLAIM

In its motion for summary judgment, Lone Star did not contest the existence of a contract, Tamasy's performance under the contract, or the damages suffered by Tamasy. Instead, Lone Star attacked the breach element of her claim, arguing that "Tamasy cannot establish that Lone Star has any independent contractual obligation to provide benefits to Tamasy." More specifically, Lone Star asserted that Tamasy could not point to any contractual obligation that Lone Star had breached and avers that "Lone Star is not a guarantor for the State of Texas." In the alternative, Lone Star claims that even if the contracts made an enforceable promise concerning pension benefits, § 830.108 "is the exclusive remedy for [Tamasy's] claims." Thus, to determine if summary judgment was proper, the first question we must answer is whether Tamasy produced any evidence raising an issue of fact as to whether the parties intended that Lone Star was obligated under the terms of the contract to continue Tamasy in her ORP participation. *See Fischer*, 479 S.W.3d at 237.[2]

_____

[2] We note that on appeal, Lone Star raises several additional reasons why Tamasy's breach of contract claim fails: (1) "Lone Star made no contractual promise to comply with 'all laws'"; (2) the "general language in Tamasy's agreements, to the effect that '[e]mployees shall enjoy such privileges as Texas State Laws and Regulations . . . shall provide' is simply a

### 1. SPECIFIC CONTRACTUAL OBLIGATIONS

Lone Star attached Tamasy's employment contracts to their motion for summary judgment. In her summary judgment response, Tamasy referenced the contracts Lone Star submitted as evidence of the breach of contract. Lone Star argues that the terms in the employment contracts are too ambiguous and indefinite to constitute an enforceable agreement. We disagree.

From 2001 to 2008, Tamasy's contracts state "Employees shall enjoy such privileges as Texas State Laws and Regulations and Policies that the District shall provide." Beginning in 2009, her employee contracts also state that Tamasy "shall also have those benefits, which are set forth in detail by System policy and laws of the State of Texas."

At the time each of her employment contracts were executed, Texas law required Lone Star to provide faculty members with an opportunity to participate in an ORP. *See* Tex. Gov't. Code Ann. § 830.101 ("The governing board of each institution of higher education shall provide an opportunity to participate in the optional retirement program to all faculty members in the component institutions governed by the board."). And from 2010 to 2015, her contracts more specifically stated that "she shall be extended those benefits which are set forth in detail by System policy and the State of Texas as may be amended. These include . . .

---

statement of existing law and cannot serve as a basis for a breach of contract claim; and (3) "a plain reading of Tamasy's employment agreement conclusively establishes that Lone Star complied with the terms of Tamasy's employment agreements." However, we may not affirm a summary judgment on a basis not specifically presented in the summary judgment motions. *Armour Pipe Line Co. v. Sandel Energy, Inc.*, 546 S.W.3d 455, 466 (Tex. App.—Houston [14th Dist.] 2018, pet. denied). Because the trial court's order did not specify the grounds for its ruling, we may affirm the summary judgment if any of the independent grounds are meritorious. *See FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000). However, we cannot affirm the summary judgment on grounds not properly raised below. *See Sandel Energy*, 546 S.W.3d at 466.

retirement program participation in TRS, ORP, TIAA-CREF and/or TDA, when applicable." The definitions of the word "extend" includes "to make available." Merriam-Webster, https://www.merriam-webster.com/dictionary/extend (last visited Aug. 20, 2021).

Giving the contract terms their plain and ordinary meanings and in attempting to ascertain the parties' intent, it is clear that Lone Star intended to extend to its faculty members the privileges granted by state law, which at all times applicable to Tamasy's contracts, included the opportunity to participate in an ORP. *See* Tex. Gov't. Code Ann. § 830.101; *Fiess,* 202 S.W.3d at 746. While the contracts from 2001 to 2009 do not specifically mention ORPs, the contracts do contain language that employees shall enjoy such privileges as provided by Texas state law. The plain meaning of these provisions conveyed a promise to extend the opportunity to participate in an ORP. *See* Tex. Gov't Code Ann. § 830.103. Additionally, from 2010 to 2015, the contracts specifically list ORPs as one of the "benefits" Lone Star was supposed to "make available" to faculty members. We do not find these contract terms to be too indefinite or ambiguous. *See Willis,* 199 S.W.3d at 275.

Reviewing the record in the light most favorable to Tamasy, there is evidence Lone Star was informed upon Tamasy's employment in 2001 that she had elected to participate in an ORP in lieu of TRS and that she was vested under the ORP. State law mandates that "[a]n institution of higher education shall accept the transfer of a participant's optional retirement program from another institution of higher education or from the Texas Education Agency." Tex. Gov't Code Ann. § 830.103. Lone Star promised to make participation in ORP available to Tamasy in each of her employment contracts. However, Lone Star acknowledges that it is undisputed that ORP participation was not made available to Tamasy because no contributions were made to her ORP from 2001 through 2015. Although Lone Star

10

continued to make contributions to TRS on behalf of Tamasy, she could not access those funds until the Government Code was amended.

We conclude that Tamasy raised a genuine issue of material fact regarding whether Lone Star's breached its contractual obligation to continue Tamasy in ORP. *Tamez*, 206 S.W.3d at 582. Accordingly, Lone Star did not establish that it was entitled to summary judgment on this ground. *See* Tex. R. Civ. P. 166a(c), (i); *FM Props. Operating*, 22 S.W.3d at 872.

### 2. GUARANTOR FOR THE STATE OF TEXAS

Next, we consider whether summary judgment was warranted on the ground that the employment contracts lacked the "requisite level of detail for Lone Star to become the guarantor of Tamasy's pension benefits." In its motion for summary judgment, Lone Star argued:

> [it] would be contractually responsible under this vague language for any and all disputes arising under Tamasy's health insurance, pension plan, or dental coverage, even though many of these plans are governed by statute and administered by third parties outside of its control (such as TRS). The Court should not interpret the language in such an unreasonable fashion. Indeed, what Tamasy is alleging would effectively make Lone Star a guarantor for the State of Texas.

We disagree with Lone Star's assertion.

The employment contracts, by their plain language, do not seek to make Lone Star a guarantor for the State of Texas or impose responsibility on Lone Star for the actions of the State of Texas or other agencies.[3] Whether Lone Star has any responsibility for TRS's administrative errors is not before the court. Instead, Tamasy simply asserts that Lone Star had an obligation to continue her participation in the ORP and that it failed to do so. And as discussed above,

---

[3] Generally, a "guarantor" is a person or entity that "promises to answer for the debt of another and may be called upon to perform once the primary obligor fails to perform." *Jamshed v. McLane Exp. Inc.*, 449 S.W.3d 871, 877 (Tex. App.—El Paso 2014, no pet.).

11

Tamasy raised a genuine issue of fact regarding Lone Star's breach of its contractual obligation to continue her in her designated ORP. The contracts do not seek to make Lone Star a guarantor of the State of Texas; rather, the contracts simply hold Lone Star accountable for its own actions.

Therefore, we conclude that Lone Star did not establish its right to traditional summary judgment on this ground as a matter of law. *See* Tex. R. Civ. P. 166a(c), (i); *FM Props. Operating*, 22 S.W.3d at 872.

## D. SECTION 830.108 IS NOT INTENDED TO BE AN EXCLUSIVE REMEDY

Lastly, we address the final ground raised in Lone Star's motion for summary judgment: whether § 830.108 was intended to be an exclusive remedy, thereby precluding Tamasy's ability to recover damages and attorney's fees. Whether § 830.108 is the exclusive remedy available to Tamasy for Lone Star's failure to forward her ORP contributions is a question of first impression.

### 1. STANDARD OF REVIEW & APPLICABLE LAW

Because it is the Legislature's prerogative to enact statutes, our primary objective is to effectuate the Legislature's intent. *See Rodriguez v. Doe*, 614 S.W.3d 380, 383 (Tex. App.—Houston [14th Dist.] 2020, no pet.). We therefore interpret statutes based on the plain language chosen by the Legislature unless the surrounding context indicates the Legislature intended a different meaning or the application of the plain language would yield absurd or nonsensical results that the Legislature could not have intended. *Id.*; *see also Pediatrics Cool Care v. Thompson*, No. 14-19-00031-CV, 2021 WL 307306, at *16 (Tex. App.—Houston [14th Dist.] Jan. 29, 2021, pet. filed) (mem. op.). When the statutory text is clear, the text alone is dispositive of the Legislature's intent. *Brazos Elec. Power Coop. v. Tex. Comm'n on Envtl. Quality*, 576 S.W.3d 374, 384 (Tex. 2019). We accord a statute's terms their common, ordinary meaning unless the Legislature has defined a term, a term has a technical meaning, or a term bears another meaning when read

12

in context. *See id.* We do not interpret statutory words and phrases in isolation from one another. *Worsdale v. City of Killeen*, 578 S.W.3d 57, 69 (Tex. 2019). We also consider the statutory framework in which individual provision reside. *See id.*; *Fort Worth Transp. Auth. v. Rodriguez*, 547 S.W.3d 830, 838 (Tex. 2018).

We cannot rewrite a statute in the guise of interpreting it. *Pedernal Energy v. Bruington Eng'g*, 536 S.W.3d 487, 492 (Tex. 2017). We cannot add to or subtract from the statutory language or interpret the meaning of its terms in a way that makes them meaningless or superfluous. *See Silguero v. CSL Plasma, Inc.*, 579 S.W.3d 53, 59 (Tex. 2019); *Brazos Elec. Power Coop.*, 576 S.W.3d at 384; *Gunn v. McCoy*, 554 S.W.3d 645, 672 (Tex. 2018). It is a rule of statutory construction that every word of a statute must be presumed to have been used for a purpose, and each sentence, clause, and word is to be given effect if reasonable and possible. *See Tex. Workers' Comp. Ins. Fund v. Del Indus., Inc.*, 35 S.W.3d 591, 593 (Tex. 2000) (citing *Perkins v. State*, 367 S.W.2d 140, 146 (Tex. 1963)); *see also Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 540 (Tex. 1981). Likewise, every word excluded from a statute must also be presumed to have been excluded for a purpose. *See Cameron*, 618 S.W.2d at 540.

To determine whether a statutory remedy is intended to be a claimant's exclusive remedy, "[t]he general rule is that when a cause of action and the remedy for its enforcement are derived not from the common law but from statute . . . the statutory remedy is exclusive." *Abbott v. G.G.E*, 463 S.W.3d 633, 651 (Tex. App.—Austin 2015, pet. denied). However, we also look to the Legislature's intent to determine if the statute was intended to be an exclusive remedy. *See City of Waco v. Lopez*, 259 S.W.3d 147, 153 (Tex. 2008) ("Whether a regulatory scheme is an exclusive remedy depends on whether 'the Legislature intended for the regulatory process to be the exclusive means of remedying the problem to which the regulation is addressed.'" (citing *In re Sw. Bell Tel. Co.,* 235 S.W.3d 619, 624–

25 (Tex. 2007) (orig. proceeding))); *see also Cash Am. Intern. Inc. v. Bennett*, 35 S.W.3d 12, 16 (Tex. 2000) (holding that the "Legislature simply intended to create an alternative remedy," as opposed to an exclusive remedy, because the statute's language did not clearly express the intent to destroy other available remedies).

### 2. ANALYSIS

In its motion for summary judgment, Lone Star claimed that "[t]he Legislature has detailed a specific remedy for the exact type of harm Plaintiff suffered, and did not allow for any additional damages, including but not limited to attorney's fees or additional interest." However, we observe nothing in the plain language of § 830.108 suggesting that it is intended to be an exclusive remedy. *See* Tex. Gov't Code Ann. § 830.108. In fact, § 830.108 does not mention causes of action, remedies, lawsuits or any type of action to be taken by an employee for violation of the statute. *See id.* Instead, § 830.108 establishes a general process for the release of funds mistakenly held in the TRS. Section 830.108 provides that upon discovering an error, TRS must transfer an amount equal to the employee's contributions into the employee's ORP account and credit the employer for its contributions paid into the TRS account. *Id.* § 830.108(c). Then, the state comptroller credits the employer with an amount equal to the state contributions that should have been paid into the ORP account. *Id.* § 830.108(e). The employer then deposits amounts representing the state and employer contributions, plus four percent interest, into the employee's ORP account. *Id.* § 830.108(f). Nothing in this framework suggests that § 830.108 was intended to abrogate any causes of actions or remedies. *See* Tex. Loc. Gov't Code Ann. § 271.152 (waiving immunity for local government entity "for the purpose of adjudicating a claim for breach of contract"); *Silguero*, 579 S.W.3d at 59; *Brazos Elec. Power Coop.*, 576 S.W.3d at 384; *Gunn*, 554 S.W.3d at 672.

Additionally, there are statutes that address the remedies available to

14

Tamasy. *See id.* §§ 271.152, 271.153. The Texas Local Government Code expressly waives sovereign immunity for civil suits in state court to adjudicate claims for breach of contract against public schools and junior college districts, such as Lone Star. *See* Tex. Loc. Gov't Code Ann. §§ 271.151(3)(B), 271.152. The Local Government Code further specifies that in suits against such entities for breach of contract, a plaintiff may recover "reasonable and necessary attorney's fees that are equitable and just." *Id.* § 271.153(a)(3). Thus, attorney's fees are recoverable in a breach of contract action against governmental entities such as Lone Star. *See id.* § 271.151(3)(B). Furthermore, § 830.108 itself does not create a cause of action or clearly indicate an intent to provide an exclusive remedy or limit causes of action. We assume the Legislature's choice of words to be deliberate. Thus, we conclude that § 830.108 was not intended to be an exclusive remedy for appellant's cause of action. *See Lopez*, 259 S.W.3d at 153; *In re Sw. Bell Tel. Co.*, 235 S.W.3d at 624–25; *Bennett*, 35 S.W.3d at 16; *Abbott*, 463 S.W.3d at 651. Accordingly, summary judgment was improper.

Because none of the independent grounds for summary judgment presented below are meritorious, we conclude that the trial erred in granting summary judgment in favor of Lone Star. *FM Props. Operating*, 22 S.W.3d at 872; *Lone Star Rd. Constr.*, 593 S.W.3d at 754–55. We sustain Tamasy's sole issue.

## III. CONCLUSION

We reverse the trial court's judgment and remand this case for further proceedings.

/s/     Margaret "Meg" Poissant
Justice

Panel consists of Justices Jewell, Poissant, and Wilson. (Jewell, J., concurring).

15