**Affirmed and Opinion filed September 29, 2022.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-20-00412-CV

---

**ARMOUR PIPE LINE COMPANY, MARY PATRICIA CASHMAN, JOAN CASHMAN, NOREEN CASHMAN, CATHLEEN CASHMAN, AND CAROLINE DECHANT, Appellants**

**V.**

**SANDEL ENERGY, INC., DOUBLE H INVESTMENTS, L.P., LAURA SANDEL GILBREATH, KERCO ASSET MANAGEMENT, LLC, SUCCESSOR IN INTEREST TO KERRI A. COLEMAN D/B/A KERCO, EDDIE THOMPSON AND EDNA ANN TEPE THOMPSON, CO-TRUSTEES OF THE EDGAR CARMEN THOMPSON FAMILY TRUST B, BILL AND LYNN MIZELL, JOE B. SANDEL, RICKY W. SLEDGE, AND CML EXPLORATION, LLC, Appellees**

---

**On Appeal from the 12th District Court
Grimes County, Texas
Trial Court Cause No. 32962**

---

# O P I N I O N

In an assignment of interests in oil and gas leases, the assignors purported to reserve an overriding royalty interest in some of the leases in favor of one assignor.

A dispute arose as to the validity of that attempted reservation. The trial court granted the assignee's summary-judgment motion because the assignor was merely a lienholder and did not possess title to the leases at the time of the assignment. Because the assignor was a "stranger to title" with respect to the leases, the trial court determined that the attempted reservation of the overriding royalty interest was void. On appeal, the assignor asserts that the trial court erred based on the doctrine of estoppel by deed and because no summary-judgment ground challenged its promissory-estoppel claim. The assignor contends that the trial court erred in denying its motion for summary judgment as to the assignee's claims. The assignor also asserts that the trial court erred in granting interpleader relief to the party who deposited funds attributable to the disputed interest into the registry of the court. Sisters claiming to be the successors of the other assignors argue that the trial court erred in granting summary judgment as to their claims because if the attempted reservation was void, then they argue the purported royalty remained with the other assignors rather than passing to the assignee. Concluding that the appellants have not shown error in the trial court's judgment, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Effective July 1, 1999, appellant Armour Pipe Line Company ("Armour"), Cashco L.L.C., Cashco Oil Company, Thomas J. Cashman, Individually and as Trustee under Eugene C. Cashman Children's Grimes County, Texas Irrevocable Trusts dated September 30, 1976, Eugene C. Cashman, Eugene C. Cashman d/b/a Cashman Oil & Gas and d/b/a Cashman Oil & Gas Company, and Eloc Oil & Gas Company, Inc. (collectively the "Assignors") executed an assignment (the "First Assignment") in which they:

> (1) conveyed and assigned to appellee Sandel Energy, Inc. "any and all of Assignors' right, title and interest in and to [99 Oil, Gas, and

2

Mineral Leases described in Exhibits A and A-1 to the First Assignment],

(2) conveyed and assigned to Sandel "any and all of Assignors' right, title and interest in [13 wells described in Exhibit B to the First Assignment],"

(3) excepted and reserved unto Eugene C. Cashman and his respective heirs, administrators, successors, and assigns a specified overriding royalty interest in 23 of the Leases—those listed in Exhibit A to the First Assignment, and

(4) purported to except and reserve unto Armour and its respective heirs, administrators, successors, and assigns a specified overriding royalty interest in the oil, gas, and other minerals produced and saved from the 76 leases listed in Exhibit A-1 to the First Assignment (hereinafter the "Purported Royalty").

In this opinion, we refer to the 76 leases listed in Exhibit A-1 to the First Assignment collectively as the "Subject Leases." The Assignors did not make any general warranty of title, but they did make a special warranty of title against any person claiming title by, through, or under the Assignors, and limited to "the purchase price of said lease and said wells, herein."

Summary-judgment evidence showed that in 1992 Armour purchased certain non-recourse mortgage notes, becoming a lienholder in the Subject Leases. The documents evidencing the transfer of the liens were not filed in the Grimes County real property records. There is no evidence that Armour ever foreclosed on any lien in the Subject Leases or ever held title to the Subject Leases. For the purposes of this opinion, we presume that, at the time of the First Assignment, Armour was a lienholder in the Subject Leases who had not foreclosed any of those liens and did not hold title to any of the Subject Leases. As part of this transaction, Armour released all liens it held in any of the leases involved in the First Assignment, including the Subject Leases (the "Release").

3

In a second assignment, effective July 1, 2000, Armour sold the Purported Royalty to Sandel Energy to the extent it applied to existing wells, but Armour did not assign the Purported Royalty as to any well drilled in the future (the "Second Assignment").

In 2011, Sandel Energy, on its own behalf and on behalf of certain "partners" executed a farmout agreement with appellee CML Exploration, LLC. CML then drilled several successful wells on leases subject to the Purported Royalty. CML concluded that the purported exception and reservation of the Purported Royalty unto Armour was "ineffective." Recognizing that a dispute likely would arise as to the validity of the Purported Royalty, CML held in suspense the funds that would be subject to the Purported Royalty if it were valid.

Appellees/plaintiffs Sandel Energy, Inc., Double H Investments, L.P., Laura Sandel Gilbreath, Kerco Asset Management, LLC, Successor in Interest to Kerri A. Coleman d/b/a KERCO, Eddie Thompson and Edna Ann Tepe Thompson, Co-Trustees of the Edgar Carmen Thompson Family Trust B, Bill and Lynn Mizell, Joe B. Sandel, and Ricky W. Sledge (collectively the "Sandel Parties") filed suit against Armour and CML. The Sandel Parties sought a declaratory judgment that any purported reservation in the First Assignment in favor of Armour is of no legal force or effect and is void. In the alternative, the Sandel Parties sought a declaratory judgment that to the extent Armour had a valid claim to the Purported Royalty, all such rights were extinguished and the Purported Royalty is of no further legal force or effect, resulting in Armour having no claim to the Purported Royalty. The Sandel Parties sought the alternative declaration based on Armour's forfeiture, in February 2003, of Armour's certificate of authority to do business in Texas. In the alternative, the Sandel Parties asserted a trespass-to-try-title action in which they sought judgment for title to and possession of the Purported Royalty.

Armour answered and asserted the following counterclaims or crossclaims: (1) a claim for declaratory relief based on the doctrine of estoppel by deed or estoppel by contract, in which Armour sought a declaratory judgment that Armour is the "rightful owner" of the Purported Royalty and that the suspended or withheld royalty payments should be paid to Armour; (2) a claim for breach of contract against Sandel Energy based on its alleged breaches of the First Assignment and of the Second Assignment; and (3) money-had-and-received claims against the Sandel Parties and CML. CML asserted claims seeking interpleader relief and attorney's fees.

Appellants/intervenors Mary Patricia Cashman, Joan Cashman, Noreen Cashman, Cathleen Cashman, and Caroline DeChant (collectively the "Cashman Sisters") filed a petition in intervention as counterplaintiffs asserting that if the First Assignment did not effectively convey and reserve the Purported Royalty unto Armour, then the Cashman Sisters would be entitled to a declaratory judgment that they are entitled to equal shares of the Purported Royalty as successors in interest to all of the Assignors and as Armour's shareholders. The Cashman Sisters also asserted money-had-and-received claims against the Sandel Parties and CML.

The Sandel Parties filed a summary-judgment motion and asserted various grounds allegedly entitling them to a declaration as a matter of law regarding the Purported Royalty (the "First Motion"). The trial court signed an interlocutory order granting the First Motion and declaring that the Purported Royalty "is of no legal force nor effect, resulting in [Armour], its successors and assigns having no claim to any rights otherwise evidenced by [the Purported Royalty]." On the same day, the trial court also granted CML's request for interpleader relief as to the funds attributable to the Purported Royalty. The trial court ordered CML to pay

into the court's registry the disputed funds, which at that time exceeded $1,500,000, and the trial court ordered CML to continue to pay into the court's registry every month any funds attributable to the disputed interest. The trial court released and discharged CML from further liability to the Sandel Parties and Armour for payments made in compliance with the court's order, and the trial court awarded CML $41,437.50 in reasonable attorney's fees to be paid out of the funds in the registry of the court prior to payment of these funds to the prevailing party.

CML later filed a summary-judgment motion asserting the sole ground that the claims against CML by Armour and the Cashman Sisters fail as a matter of law based on the trial court's summary-judgment order in which the court granted the First Motion ("CML's Motion"). The trial court granted CML's Motion and ordered that Armour and the Cashman Sisters take nothing by their claims against CML.

Armour and the Cashman Sisters (collectively the "Cashman Parties") filed a joint motion for partial summary judgment, seeking to have the trial court reconsider its order granting the First Motion and grant declaratory relief in Armour's favor. The Cashman Parties also requested (1) certain declaratory relief if Armour was not entitled to the Purported Royalty because of the temporary absence of Armour's certificate of authority to do business in Texas, and (2) other declaratory relief if the First Assignment did not effectively convey and reserve the Purported Royalty unto Armour. The Sandel Parties filed a second motion seeking summary judgment as to the Cashman Sisters' claims (the "Second Motion"). The trial court denied the Cashman Parties' motion, granted the Second Motion, and reaffirmed the court's prior order granting the First Motion.

The Sandel Parties filed a third summary-judgment motion seeking

6

judgment as a matter of law on their request for attorney's fees under the Declaratory Judgments Act. The trial court granted this motion, awarding the Sandel Parties recovery against the Cashman Parties jointly and severally for trial attorney's fees as well as making conditional awards of appellate attorney's fees. The trial court rendered a final judgment, in which the court incorporated and attached its prior summary-judgment orders.

The Cashman Parties appealed the trial court's final judgment to this court. On appeal, the Sandel Parties argued that this court should uphold the order granting the First Motion based on the "stranger to title" doctrine, under which, an exception or reservation in favor of a purported assignor of real property who, in fact, is a "stranger to title" owning no title to the property conveyed, conveys no title to this stranger. *See Armour Pipe Line Co. v. Sandel Energy, Inc.*, 546 S.W.3d 455, 465 (Tex. App.—Houston [14th Dist.] 2018, pet. denied). This court concluded that it could not properly affirm the trial court's granting of the First Motion on the stranger-to-title ground because the Sandel Parties did not expressly present that ground in the First Motion. *See id*. at 466. This court determined that the trial court erred in granting the First Motion on each of the grounds the Sandel Parties expressly presented in the First Motion and therefore the trial court erred in declaring that the Purported Royalty "is of no legal force nor effect, resulting in [Armour], its successors and assigns having no claim to any rights otherwise evidenced by [the Purported Royalty]." *See id*. This court concluded that the trial court erred in granting CML's Motion and in ordering that the Cashman Parties take nothing as to their claims against CML. *See id*. at 466–67. This court also determined that the trial court did not err in denying the Cashman Parties' cross-motion to the extent they sought declaratory relief as a matter of law in favor of Armour and that this court did not need to address whether the Cashman Sisters

7

were entitled to the alternative relief they requested in the cross-motion or whether the trial court erred in granting the Second Motion. *See id*. at 467–68. This court reversed all of the attorney's-fee awards in the trial court's judgment, as well as the trial court's orders granting the First Motion and granting CML's Motion and remanded the case to the trial court for further proceedings. *See id*. at 469.

On remand, the Sandel Parties filed a fourth summary-judgment motion ("Fourth Motion") in which they asserted traditional and no-evidence grounds seeking summary judgment as to all of the Cashman Parties' claims. The Sandel Parties did not seek summary judgment on any of their claims. CML filed a motion for a traditional summary judgment challenging the Cashman Parties' claims against CML ("CML's Second Motion"). The Cashman Parties opposed the Fourth Motion and CML's Second Motion, and they filed a traditional motion for summary judgment seeking (1) summary judgment against the Sandel Parties' two claims (for declaratory relief and trespass to try title) and (2) summary judgment in favor of Armour on its claims for declaratory relief, breach of contract, and money had and received (the "Cross Motion"). The Sandel Parties opposed the Cross Motion.

The trial court held a hearing on the Fourth Motion and then a hearing on the Cross Motion. The trial court signed an interlocutory order granting the Fourth Motion. The trial court later signed a final judgment in which the court: (1) incorporated by reference its 2014 order granting CML's request for interpleader relief, (2) incorporated by reference its order granting the Fourth Motion, (3) granted CML's Second Motion, (4) denied the Cross Motion to the extent the Cashman Parties sought summary judgment on their claims for affirmative relief, (5) dismissed without prejudice the Sandel Parties' declaratory-judgment claim because the court determined that its order granting the Fourth Motion rendered

8

that claim moot, (6) denied the Cross Motion to the extent the Cashman Parties sought summary judgment as to the Sandel Parties' claims in light of the court's dismissal without prejudice of the Sandel Parties' declaratory-judgment claim, (7) denied all parties' requests for attorney's fees under the Declaratory Judgments Act, (8) awarded to the Sandel Parties all of the funds deposited in the registry of the court by CML, except the $41,437.50 in attorney's fees that the trial court ordered to be paid to CML out of the deposited funds in the December 1, 2014 interpleader order, and (9) awarded the Sandel Parties their taxable court costs.

## II. ISSUES AND ANALYSIS

Armour and the Cashman Sisters timely perfected appeal and have filed separate appellant's briefs and reply briefs. The Sandel Parties have filed separate appellees' briefs in response to the two appellant's briefs. In a traditional motion for summary judgment, if the movant's motion and summary-judgment evidence facially establish its right to judgment as a matter of law, the burden shifts to the nonmovant to raise a genuine, material fact issue sufficient to defeat summary judgment. *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000). In reviewing a no-evidence summary judgment, we ascertain whether the nonmovant presented summary-judgment evidence raising a genuine fact issue as to the essential elements attacked in the no-evidence motion. *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 206–08 (Tex. 2002). In our de novo review of a trial court's summary judgment, we consider all the evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). The evidence raises a genuine fact issue if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary-judgment evidence.

9

*Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007).

**A.     Did the trial court err in failing to apply estoppel by deed to conclude that Armour is entitled as a matter of law to a declaration that Armour owns the Purported Royalty?**

In the Fourth Motion, the Sandel Parties sought summary judgment in their favor as to all of Armour's claims based on various grounds, including the following:

> (1) Armour did not possess title in and to the Subject Leases at the time of the First Assignment, and thus Armour is a "stranger to title" with respect to the Subject Leases. As a "stranger to title" the attempted reservation of the Purported Royalty in favor of Armour is void and of no force and effect;

> (2) all of Armour's claims require Armour to show that it possessed title in and to the Subject Leases at the time of the First Assignment. Absent such title interest, Armour is a "stranger to title," and any purported reservation in the First Assignment in favor of Armour is void. Armour has no competent evidence of such title.

In its order granting the Fourth Motion, the trial court did not specify the grounds upon which the trial court relied, and therefore the trial court impliedly granted summary judgment on each ground in the Fourth Motion, including these two grounds. *See FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000).

Relying on the estoppel-by-deed doctrine, Armour sought in the Cross Motion a declaration as a matter of law that (1) Armour owns an overriding royalty interest in newly drilled wells on the leases assigned by the First Assignment and the Second Assignment, and (2) the Sandel Parties do not own this overriding royalty interest (the "Requested Declaration"). By granting the Fourth Motion, the trial court ruled as a matter of law that this claim lacked merit based on an implied determination that Armour is a "stranger to title" with respect to the Subject Leases

10

and therefore the attempted reservation of the Purported Royalty in favor of Armour is void and of no force and effect. By denying the Cross Motion, the trial court denied Armour's summary-judgment motion asserting that as a matter of law Armour was entitled to the Requested Declaration based on the doctrine of estoppel by deed. Under its first issue, Armour argues that the trial court erred in failing to apply the doctrine of estoppel by deed to conclude that Armour is entitled as a matter of law to the Requested Declaration. Liberally construing Armour's brief, Armour also argues that the trial court erred in granting the Fourth Motion as to Armour's declaratory-judgment claim because under the doctrine of estoppel by deed Armour was entitled as a matter of law to its Requested Declaration.

Under the estoppel-by-deed doctrine, a party to a deed is bound by the recitals in a deed in which the party or its predecessor in title was a party if the party is claiming title through the deed. *Trial v. Dragon*, 593 S.W.3d 313, 318, 320 (Tex. 2019). This court has defined a "recital" as "[t]he formal statement or setting forth of some matter of fact, in any deed or writing, in order to explain the reasons upon which the transaction is founded." *McMahan v. Greenwood*, 108 S.W.3d 467, 484 (Tex. App.—Houston [14th Dist.] 2003, pet. denied).

Armour contends that three clauses in the First Assignment constitute recitals that bind the Sandel Parties under the estoppel-by-deed doctrine. Armour asserts that the following language from the granting clause estops the Sandel Parties from denying that the Assignors owned all interests in the mineral leases listed in Exhibits A and B to the First Assignment: "the above-named Assignors do hereby GRANT, BARGAIN, SELL, CONVEY, AND ASSIGN to the above-named Assignee [Sandel Energy], any and all of Assignors' right, title and interest in and to the Oil, Gas and Mineral Leases . . ." This part of the granting clause is not a recital. *See McMahan v. Greenwood*, 108 S.W.3d at 484; *Patton Children's*

11

*Trust v. Hamlin*, No. 07-07-0488-CV, 2008 WL 3863475, at *5 (Tex. App.—Amarillo Aug. 20, 2008, no pet.)(mem. op). The Assignors' statement that they convey and assign any and all right, title, and interest in and to the mineral leases reflects an intent to convey and assign whatever right, title, and interest the Assignors may have had at the time of the First Assignment, rather than a statement by the Assignors that they owned any or all of the interests in the mineral leases listed in Exhibits A and B to the First Assignment. *See Clark v. Gauntt*, 161 S.W.2d 270, 271–72 (Tex. 1942); *Texas Standard Oil & Gas. L.P. v. Frankel*, 394 S.W.3d 753, 771 (Tex. App.—Houston [14th Dist.] 2012, no pet.). We conclude that this language from the granting clause in the First Assignment is not a recital that binds the Sandel Parties under the estoppel-by-deed doctrine, and therefore this language does not estop them from denying that the Assignors owned all interests in the mineral leases listed in Exhibits A and B to the First Assignment. *See Clark*, 161 S.W.2d at 271–72; *Texas Standard Oil & Gas. L.P.*, 394 S.W.3d at 771; *McMahan*, 108 S.W.3d at 484; *Patton Children's Trust*, 2008 WL 3863475, at *5.

Armour also contends that this language in the First Assignment is a recital that binds the Sandel Parties under the estoppel-by-deed doctrine and estops them from denying that Armour owns an overriding royalty interest in newly drilled wells on the Subject Leases: "Assignors hereby . . . RESERVE unto ARMOUR PIPE LINE COMPANY . . .an overriding royalty interest [in the Subject Leases]." This part of the First Assignment is a purported reservation rather than a recital. *See McMahan*, 108 S.W.3d at 484; *Patton Children's Trust*, 2008 WL 3863475, at *5. A reservation is the creation of a new right in favor of the grantor. *See Target Corp. v. D&H Props., L.L.C.*, 637 S.W.3d 816, 836 (Tex. App.—Houston [14th Dist.] 2021, pet. denied). The Assignors' attempt to reserve an overriding royalty

12

interest in favor of Armour does not constitute a statement that Armour owns an overriding royalty interest in newly drilled wells on the Subject Leases. *See Target Corp.*, 637 S.W.3d at 836; *McMahan*, 108 S.W.3d at 484; *Patton Children's Trust*, 2008 WL 3863475, at *5.

Armour further argues that this language from the First Assignment is a recital that binds the Sandel Parties under the estoppel-by-deed doctrine and estops them from denying that they do not own an overriding royalty interest in newly drilled wells on the Subject Leases: "Assignors hereby . . . EXCEPT . . . an overriding royalty interest [in the Subject Leases]." This part of the First Assignment is a purported exception rather than a recital. *See McMahan*, 108 S.W.3d at 484; *Patton Children's Trust*, 2008 WL 3863475, at *5. An exception operates to exclude some interest from the grant. *See Target Corp.*, 637 S.W.3d at 836. The Assignors' statement that they excepted an overriding royalty in the Subject Leases does not constitute a statement that the Sandel Parties do not own an overriding royalty interest in newly drilled wells on the Subject Leases. *See Target Corp.*, 637 S.W.3d at 836; *McMahan*, 108 S.W.3d at 484; *Patton Children's Trust*, 2008 WL 3863475, at *5.

Armour also relies on alleged recitals in the Second Assignment as a basis for estoppel by deed. Sandel Energy claims title to the Purported Royalty through the First Assignment, not through the Second Assignment. Because Sandel is claiming title based on the First Assignment and independently of the Second Assignment, estoppel by deed does not bind Sandel Energy as to any statements in the Second Assignment. *See Trial*, 593 S.W.3d at 320.

Armour cites *XTO Energy, Inc. v. Nikolai*, a case in which the Second Court of Appeals held that under estoppel by deed, the Nikolais were estopped from denying a 1904 mineral reservation because a prior deed through which the

13

Nikolais claimed title contained an unambiguous recital of the mineral reservation and other deeds through which the Nikolais claimed title referred to the deed with the recital. *See* 357 S.W.3d 47, 55–58 (Tex. App.—Fort Worth 2011, pet. denied). The *Nikolai* case is not on point because the recital in that case was contained in a deed through which the Nikolais claimed title. *See id.* Armour also cites *Teal Trading and Development, L.P. v. Champee Springs Ranches Property Owners Association*, a case from the Fourth Court of Appeals. *See* 432 S.W.3d 381 (Tex. App.—San Antonio 2014, pet. denied). In that case, the court of appeals held that none of the deeds in Teal Trading's chain of title contained a recital acknowledging the validity and enforceability of the non-access restriction at issue and that the summary-judgment movant did not prove estoppel by deed as a matter of law. *See id.* at 389–93. The *Teal Trading* court's holding does not support Armour's position. *See id.*

Armour asserts that under the estoppel-by-deed doctrine the following recitals in the Release bind the Sandel Parties: (1) that at the time of the First Assignment transaction Armour was a lienholder in the Subject Leases; and (2) as part of the First Assignment transaction Armour released its liens in the Subject Leases. We presume for the sake of argument that the Sandel Parties are bound by these propositions. But, even under this presumption, these propositions do not show that Armour owns an overriding royalty interest in newly drilled wells on the leases assigned by the First Assignment and the Second Assignment. There is no evidence that Armour ever foreclosed any lien in the Subject Leases or held title to any of the Subject Leases. Armour's lienholder status up until the time of the First Assignment transaction did not give Armour any title in or to the Subject Leases that could be subject to a reservation or exception, nor did this status mean that Armour was not a stranger to the title to the Subject Leases. *See Bankers Home*

14

*Bldg. & Loan Ass'n v. Wyatt*, 162 S.W.2d 694, 696 (Tex. 1942); *First Nat'l Bank of Bellaire v. Huffman Indep. Sch. Dist.*, 770 S.W.2d 571, 573 (Tex. App.—Houston [14th Dist.] 1989, writ denied); *Little v. Lender*, 651 S.W.2d 895, 900–901 (Tex. App.—Tyler 1983, writ ref'd n.r.e.); *Ryan v. Fort Worth Nat'l Bank*, 433 S.W.2d 2, 7–8 (Tex. Civ. App.—Austin 1968, no writ).

We conclude that Armour has not shown that under the estoppel-by-deed doctrine Armour was entitled as a matter of law to the Requested Declaration. We overrule Armour's first issue.[1]

**B.    Did the trial court err in denying the Cross Motion as to Armour's breach-of-contract claims against the Sandel Parties and CML?**

In its second issue, Armour asserts that the trial court erred in denying the Cross Motion as to Armour's breach-of-contract claims against the Sandel Parties and CML. Armour argues that the First Assignment and the Second Assignments were contracts between Armour and Sandel Energy and that the other Sandel Parties and CML are Sandel Energy's successors who are bound and liable under each agreement. According to Armour, the Sandel Parties breached these two contracts by failing to pay Armour the amounts owed to it due to the Purported Royalty. For Armour to prove a breach of contract under these claims, Armour must establish that it is entitled to payment based on the Purported Royalty. Armour has not shown that the trial court erred in granting the Fourth Motion as to Armour's breach-of-contract claims, nor has Armour shown that it proved as a matter of law its entitlement to payment based on the Purported Royalty as a basis for its Cross Motion. Armour has not shown that the trial court erred in denying the Cross Motion as to its breach-of-contract claims against the Sandel Parties and

---

[1] In their opening brief, the Cashman Sisters adopt all of Armour's arguments under Texas Rule of Appellate Procedure 9.7. *See* Tex. R. App. P. 9.7. We presume that the Cashman Sisters assert the same issues and arguments as Armour. Therefore, each time we rule on one of Armour's issues, we make the same ruling as to the Cashman Sister's assertion of that issue.

15

CML. *See Nexion Health at Duncanville, Inc. v. Ross*, 374 S.W.3d 619, 627 (Tex. App.—Dallas 2012, pet. denied).

## C. Did the trial court abuse its discretion in granting CML interpleader relief?

Under its second issue, Armour challenges the trial court's December 1, 2014 order granting CML interpleader relief and awarding CML $41,437.50 in reasonable attorney's fees to be paid out of the funds in the registry of the court prior to payment of these funds to the prevailing party. In their appellate brief, the Cashman Sisters assert in their second issue that the trial court erred in awarding interpleader relief and attorney's fees to CML. The Cashman Sister do not provide any argument in their brief to support this issue, but they do adopt Armour's arguments in its opening brief under Texas Rule of Appellate Procedure 9.7. *See* Tex. R. App. P. 9.7. We presume that the Cashman Sisters have adopted all of Armour's arguments as to interpleader relief and attorney's fees.

We review the trial court's grant of interpleader relief for an abuse of discretion. *McCall v. AXA Equitable Life Ins. Co.*, No. 14-04-01111-CV, 2006 WL 17861, at *2 (Tex. App.—Houston [14th Dist.] Jan. 5, 2006, no pet.) (mem. op.). A trial court abuses its discretion when the court acts in an arbitrary or unreasonable manner, or without reference to guiding rules and principles. *Downer v. Aquamarine Operators*, 701 S.W.2d 238, 241–42 (Tex. 1985). Under the abuse-of-discretion standard of review, a challenge to the legal and factual sufficiency of the evidence is not an independent ground of error, but is merely a factor in assessing whether the trial court abused its discretion. *See Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991). Any reasonable doubt as to a stakeholder's right to interpleader relief must be resolved in the stakeholder's favor. *Bryant v. United Shortline Inc. Assurance Services, N. A.*, 972 S.W.2d 26, 31 (Tex. 1998); *Atu v.*

*Slaughter*, No. 14-06-00771-CV, 2007 WL 2682198, at \*2 (Tex. App.—Houston [14th Dist.] Sep. 13, 2007, no pet.) (mem. op.).

A party is entitled to interpleader relief if the party establishes three elements: (1) it is either subject to, or has reasonable grounds to anticipate, rival claims to the same funds; (2) it has not unreasonably delayed filing its action for interpleader; and (3) it has unconditionally tendered the funds into the registry of the court. *Fort Worth Transportation Auth. v. Rodriguez*, 547 S.W.3d 830, 850 (Tex. 2018); *Olmos v. Pecan Grove Mun. Util. Dist.*, 857 S.W.2d 734, 741 (Tex. App.—Houston [14th Dist.] 1993, no writ). On appeal the Cashman Parties do not challenge the second or third element. As to the first element, the Cashman Parties assert that there was no real doubt or risk that CML might be liable to the Sandel Parties for the amounts attributable to the Purported Royalty because the Sandel Parties are not entitled to these amounts under the estoppel-by-deed doctrine. The party seeking interpleader relief is not required to determine the merits of the rival claims. *See McCall*, 2006 WL 17861, at \*2. Based the evidence before the trial court when it granted interpleader relief on December 1, 2014, the trial court did not abuse its discretion by finding that CML was subject to rival claims to the same funds. *See id.*

Armour also asserts that the trial court erred in granting interpleader relief because CML breached the First Assignment and Second Assignment. We presume for the sake of argument, that breaching the First Assignment or the Second Assignment would preclude CML from obtaining interpleader relief. The Cashman Parties argue that the First Assignment and the Second Assignment were contracts between Armour and Sandel Energy and that the other Sandel Parties and CML are Sandel Energy's successors who are bound and liable under each agreement. According to the Cashman Parties, CML breached these two contracts by failing to pay Armour the amounts owed to it due to the Purported Royalty. For

17

Armour to prove a breach of contract under these claims. Armour must establish that it is entitled to payment based on the Purported Royalty. The Cashman Parties have not shown that the trial court erred in granting the Fourth Motion as to Armour's claims, nor have the Cashman Parties shown that Armour proved as a matter of law its entitlement to payment based on the Purported Royalty as a basis for the Cross Motion. The Cashman Parties have not shown that the trial court abused its discretion in granting interpleader relief because CML breached the First Assignment and Second Assignment. *See McCall*, 2006 WL 17861, at *2. The Cashman Parties have not shown that the trial court abused its discretion in granting interpleader relief. *See McCall*, 2006 WL 17861, at *2; *Olmos*, 857 S.W.2d at 741.

In addition to interpleader relief, an innocent, disinterested stakeholder in an interpleader may recover its reasonable attorney's fees, to be paid out of the interpleaded funds. *Rodriguez*, 547 S.W.3d 850–51. The Supreme Court of Texas has noted that although that court has not defined "innocent, disinterested stakeholder," Black's Law Dictionary defines "innocent" as "free from legal fault," "disinterested" as "not having a pecuniary interest in the matter at hand," and "stakeholder" as "[a] disinterested third party who holds money or property, the right to which is disputed between two or more other parties." *Rodriguez*, 547 S.W.3d at 852 (quoting Black's Law Dictionary (10th ed. 2014)).

An interpleading party may not recover attorney's fees if the interpleading party is responsible for the conflicting claims to the funds or property. *Rodriguez*, 547 S.W.3d at 851. The Cashman Parties assert that CML is responsible for the conflicting claims regarding the Purported Royalty because CML had its landman "fabricate an utterly non-viable legal issue—that [the Sandel Parties] might own [the Purported Royalty] notwithstanding two contracts that squarely foreclose this

18

position" and because CML convinced Sandel Energy's Chairman that Armour did not own the Purported Royalty. In support of this assertion the Cashman Parties cite evidence in documents filed with the trial court after the trial court made the challenged interpleader ruling on December 1, 2014. Our review of the merits of this ruling is limited to the record in the trial court when the trial court ruled. *See Ginn v. Pierce*, 595 S.W.3d 762, 766 (Tex. App.—Houston [14th Dist.] 2019, pet. denied). Based on the record before the trial court at that time, the trial court did not abuse its discretion by impliedly finding that CML was not responsible for the conflicting claims regarding the Purported Royalty. *See Olmos*, 857 S.W.2d at 742.

The Cashman Parties also assert that CML cannot be a "third party" and thus cannot be a "stakeholder" because CML is in privity of contract with the Sandel Parties. *See Rodriguez*, 547 S.W.3d at 852 (quoting the definition of "stakeholder" as "[a] disinterested **third party** who holds money or property, the right to which is disputed between two or more other parties") (emphasis added). The Cashman Parties cite *Union Gas Corporation v. Gisler* for this proposition. *See* 129 S.W.3d 145, 153 (Tex. App.—Corpus Christi 2003, no pet.). In *Gisler*, an oil and gas lessee drafted a unit designation that conflicted with the lessee's obligations to the lessors, thus causing the dispute and making the lessee owe the same proceeds to the lessors and other royalty owners in the pooling unit. *Gisler*, 129 S.W.3d at 148–49, 153. The *Gisler* court concluded that the lessee was not an innocent stakeholder because the lessee breached its obligations to the lessors and was responsible for the conflicting claims to funds. *See id*. at 153. The *Gisler* court did not state that a party in privity of contract with one of the rival claimants is not a "third party" and therefore may not be a stakeholder in the interpleader context, nor does the *Gisler* opinion support this proposition. *See id.* at 148–49, 152–54. We conclude that CML being in privity of contract with one or more of the rival

19

claimants does not preclude CML from being a stakeholder. *See McCall*, 2006 WL 17861, at \*2; *Olmos*, 857 S.W.2d at 740–42.

The Cashman Parties also contend that CML is not disinterested because CML has taken the position that the Purported Royalty is not effective or valid under the "stranger to title" doctrine. The Supreme Court of Texas has indicated that the meaning of "disinterested" is "not having a pecuniary interest in the matter at hand." *See Rodriguez*, 547 S.W.3d at 852 (quoting Black's Law Dictionary (10th ed. 2014)). The Cashman Parties do not assert that CML has a pecuniary interest in the matter at hand, and the evidence before the trial court showed that CML does not assert an interest in the Purported Royalty and that CML had held the funds attributable to the Purported Royalty in suspense, rather than paying them to Armour or the Sandel Parties. In this context, CML taking a position on the effectiveness or validity of the Purported Royalty does not preclude CML from being "disinterested." *See Pulkrabeck v. Griffith & Griffith*, 179 S.W. 282, 283 (Tex. Civ. App.—Dallas 1915, no writ) (concluding that party should not be denied interpleader relief simply because it expressed an opinion in favor of one of the rival claimants).

Based on the evidence before it on December 1, 2014, the trial court did not abuse its discretion by impliedly determining that CML was an innocent, disinterested stakeholder that should recover its reasonable attorney's fees out of the interpleaded funds. *See Rodriguez*, 547 S.W.3d 850–51; *McCall*, 2006 WL 17861, at \*2–3; *Olmos*, 857 S.W.2d at 740–42.

We overrule Armour's second issue.

**D.    Did the trial court err in denying the Cross Motion as to the Sandel Parties' two claims?**

In its third issue Armour asserts that the trial court erred in denying the part

of the Cross Motion in which Armour asserted that quasi-estoppel and the statute of limitations bar both of the Sandel Parties' claims and the part in which Armour argued that as a matter of law a trespass-to-try-title action is not available to determine title to an overriding royalty interest. The Sandel Parties asserted only two claims—a claim for declaratory relief and a trespass-to-try-title action. In the Fourth Motion, though the Sandel Parties sought summary judgment as to all the claims of the Cashman Parties, the Sandel Parties did not seek summary judgment on either of their claims for affirmative relief. Counsel for the Sandel Parties affirmed this point several times in the trial court as well as on appeal.

After the trial court granted the Fourth Motion but before the trial court signed the final judgment, counsel for the Sandel Parties submitted a proposed judgment to trial court. The Sandel Parties and CML approved the form of this judgment, but the Cashman Parties did not. The trial court later signed this proposed judgment. When counsel for the Sandel Parties submitted the proposed judgment, he also submitted a letter he had sent to counsel for Armour. Both in that letter and in a later filing with the trial court in response to the Cashman Parties' objections to the proposed judgment, counsel for the Sandel Parties reiterated that the Fourth Motion did not seek summary judgment as to the Sandel Parties' claims and explained that, according to the Sandel Parties, by granting the Fourth Motion and denying the Cashman Parties' claims on the merits, the trial court resolved the issue of the validity of the Purported Royalty claimed by Armour, thus rendering moot the Sandel Parties' claims for affirmative relief.

In the trial court's final judgment, the court dismisses the Sandel Parties declaratory-judgment claims, states that the court denies all relief not expressly granted in the judgment, and adds *Lehmann* finality language. *See Lehmann v. Har–Con Corp.*, 39 S.W.3d 191, 200 (Tex. 2001). Because the trial court did not

21

expressly grant the Sandel Parties any relief on their trespass-to-try-title actions, the effect of the language in the judgment was to dismiss the trespass-to-try-title actions. *See In re Daredia*, 317 S.W.3d 247, 248–49 (Tex. 2010). In the trial court's final judgment, the trial court did not grant any declaratory relief, as the trial court did in the final judgment that formed the basis of the first appeal in this case. *See Armour Pipe Line Co.*, 546 S.W.3d at 458–459. Nor did the trial court render judgment for title to and possession of any property, as it would in a trespass-to-try-title action. Rather than grant relief to the Sandel Parties based on any of their claims, the trial court dismissed the Sandel Parties' claims. The Sandel Parties have not appealed from this judgment or challenged the dismissal of their claims. On appeal, the Cashman Parties have not briefed any argument that the trial court erred in awarding the funds in the registry of the court to the Sandel Parties (after the deduction of the attorney's fees awarded to CML), without ruling in the Sandel Parties' favor on any of their claims. The trial court rendered a final judgment in this case dismissing the Sandel Parties' claims, and the Sandel Parties have not challenged this judgment. In this context, the issue as to whether the trial court erred in denying the Cross Motion as to the Sandel Parties' claims is moot, and we dismiss the third issue as moot. *See Casto Lopez Concrete, LLC v. Sage Commercial Group, LLC*, No. 14-20-00734-CV, 2022 WL 1789806, at *2–3 (Tex. App.—Houston [14th Dist.] Jun. 2, 2022, no pet.) (mem. op.).

**E.      Did the trial court err in granting summary judgment as to Armour's promissory-estoppel claim because the Sandel Parties did not move for summary judgment on this claim?**

In its fourth issue, Armour asserts that the trial court erred in granting summary judgment as to Armour's promissory-estoppel claim because the Sandel Parties did not move for summary judgment on this claim. Though Armour did not assert this claim until after the Sandel Parties filed the Fourth Motion, this fact

22

does not mandate the conclusion that the trial court erred in granting summary judgment as to the promissory-estoppel claim. If the summary-judgment grounds expressly presented in a motion are sufficiently broad to encompass a claim first asserted in an amended pleading filed after the motion, it is procedurally appropriate for the trial court to grant summary judgment as to the new claim, even if the movant does not amend the motion to expressly address the new claim. *See Wilson v. Korthauer*, 21 S.W.3d 573, 579 (Tex. App.—Houston [14th Dist.] 2000, pet. denied). In the Fourth Motion, the Sandel Parties sought summary judgment on the ground that all of Armour's claims require Armour to show that it possessed title in and to the Subject Leases at the time of the First Assignment. The Sandel Parties stated that absent such title interest, Armour is a "stranger to title," and any purported reservation in the First Assignment in favor of Armour is void. In the Fourth Motion, the Sandel Parties asserted that Armour has no competent evidence of such title. After reviewing the grounds expressly presented in the Fourth Motion we conclude that they are sufficiently broad to encompass Armour's promissory-estoppel claim, and therefore the trial court did not err in granting summary judgment as to this claim even though Armour did not amend the Fourth Motion to expressly address the new claim. *See Sorrow v. Harris County*, No. 14-15-00571-CV, 2016 WL 4445037, at \*5 (Tex. App.—Houston [14th Dist.] Aug. 23, 2016, pet. denied) (mem. op.). Therefore, we overrule the fourth issue.

## F. Did the trial court err in denying Armour's request for attorney's fees and in awarding CML attorney's fees?

In its fifth issue, Armour asserts that the trial court erred in denying its request for attorney's fees and in awarding attorney's fees to CML. Armour asserts that the trial court erred in denying Armour recovery of any attorney's fees because (1) Armour is entitled to recover attorney's fees based on its recovery of damages

23

on its breach-of-contract claims against the Sandel Parties and CML; and (2) Armour is entitled to attorney's fees under Civil Practice and Remedies Code section 37.009 based on its declaratory-judgment claim. *See* Tex. Civ. Prac. & Rem. Code Ann. §37.009.

As to attorney's fees relating to its breach-of-contract claims, the trial court did not rule in Armour's favor on its breach-of-contract claims, and Armour has not shown that the trial court erred in granting the Fourth Motion as to Armour's breach-of-contract claims. Thus, Armour has not shown that the trial court erred in denying its request for attorney's fees based on its breach-of-contract claims. *See TEPCO, L.L.C. v. Reef Exploration, L.P.*, 485 S.W.3d 557, 568 (Tex. App.—Houston [14th Dist.] 2016, no pet.). As to attorney's fees under the Declaratory Judgments Act, the trial court may award reasonable and necessary attorney's fees as are equitable and just. Tex. Civ. Prac. & Rem. Code Ann. § 37.009. The trial court denied all parties' requests for attorney's fees under the Declaratory Judgments Act, impliedly determining that it would not be equitable and just to award attorney's fees to any party. *See Kings River Trail Ass'n v. Pinehurst Trail Holdings, L.L.C.*, 447 S.W.3d 439, 451–52 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). We review this ruling for an abuse of discretion. *See Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998). Under this standard, we conclude that Armour has not shown that the trial court abused its discretion by failing to award Armour attorney's fees under the Declaratory Judgments Act. *See Kings River Trail Ass'n*, 447 S.W.3d at 451–52.

Under its fifth issue, Armour also asserts that the trial court erred in awarding CML its attorney's fees as an innocent, disinterested stakeholder. We presume that the Cashman Sisters make this same argument under their second issue because they have adopted all of Armour's arguments under Texas Rule of Appellate Procedure 9.7. *See* Tex. R. App. P. 9.7. The Cashman Parties argue that

the First Assignment and the Second Assignment were contracts between Armour and Sandel Energy and that the other Sandel Parties and CML are Sandel Energy's successors who are bound and liable under each agreement. According to the Cashman Parties, CML breached these two contracts by failing to pay Armour the amounts owed to it due to the Purported Royalty, and therefore CML may not recover attorney's fees. For Armour to prove a breach of contract under these claims, Armour must establish that it is entitled to payment based on the Purported Royalty. The Cashman Parties have not shown that the trial court erred in granting the Fourth Motion as to Armour's claims, nor have they shown that Armour proved as a matter of law its entitlement to payment based on the Purported Royalty as a basis for the Cross Motion. The Cashman Parties have not shown that the trial court abused its discretion in awarding CML its attorney's fees because CML breached the First Assignment and Second Assignment. *See McCall*, 2006 WL 17861, at *2.

The Cashman Parties also assert that CML was responsible for the conflicting claims regarding the Purported Royalty. In support of this assertion the Cashman Parties cite evidence in court filings after the trial court made the challenged interpleader ruling on December 1, 2014. Our review of the merits of this ruling is limited to the record in the trial court when the trial court ruled. *See Ginn*, 595 S.W.3d at 766. Based on the record before the trial court at that time, the trial court did not abuse its discretion by impliedly finding that CML was not responsible for the conflicting claims regarding the Purported Royalty. *See Olmos*, 857 S.W.2d at 742.

We overrule Armour's fifth issue and the Cashman Sisters' second issue.

**G.    Did the trial court err in granting the Fourth Motion as to the Cashman Sisters' claims?**

In their first issue, the Cashman Sisters assert that the trial court erred in (1)

25

declining to accept as true the Cashman Sisters' summary-judgment evidence showing them to be successors to all of the Assignors; and (2) granting the Fourth Motion as to the Cashman Sisters' claims. We presume for the sake of argument that the Cashman Sisters are the successors of all of the Assignors. The Cashman Sisters assert that Armour owns the Purported Royalty to the extent it pertains to production attributable to the Subject Leases from any new wells drilled after July 1, 2000.  In the alternative, to the extent it is determined that the reservation of the Purported Royalty in favor of Armour in the First Assignment was not effective, the Cashman Sisters argue that the Purported Royalty remained with the Assignors because the Purported Royalty was specifically excepted from the grant to Sandel Energy. In this event, because they are the successors to the Assignors, the Cashman Sisters contend that they would own the Purported Royalty.

The Cashman Sisters cite various cases that stand for the general proposition that property that is "excepted" or "reserved" under a deed is not included in the grant. *See Combest v. Mustang Minerals, LLC*, 502 S.W.3d 173, 179 (Tex. App.—San Antonio 2016, pet. denied). Significantly, none of the cases cited by the Cashman Sisters involve a court determining whether title to property that is the subject of an invalid reservation or exception remains with the grantor or passes to the grantee. The courts that have addressed this issue have concluded that title passes to the grantee. *See State v. Dunn*, 574 S.W.2d 821, 824 (Tex. App.—Amarillo 1978, writ ref'd n.r.e.) (concluding that because attempted exception of property in a deed was invalid, the property that was the subject of the attempted exemption passed to the grantee); *Lewis v. Midgett*, 448 S.W.2d 548, 551–52 (Tex. Civ. App.—Tyler 1969, no writ) (holding that because attempted exception of property in a deed was void the property that was the subject of the attempted exemption passed to the grantee). The Cashman Sisters have not shown that if the attempt to reserve or except the Purported Royalty was void or invalid, title to the

26

Purported Royalty would stay with the Assignors rather than pass to Sandel Energy. *See Dunn*, 574 S.W.2d at 824; *Lewis*, 448 S.W.2d at 551–52. We overrule the Cashman Sisters' first issue.

### III. CONCLUSION

Armour has not shown that (1) under the doctrine of estoppel by deed Armour was entitled as a matter of law to the Requested Declaration; (2) the trial court erred in denying the Cross Motion as to its breach-of-contract claims against the Sandel Parties and CML; (3) the trial court erred in denying Armour's request for attorney's fees based on its breach-of-contract claims; and (4) the trial court abused its discretion by failing to award Armour attorney's fees under the Declaratory Judgments Act. We conclude that the issue as to whether the trial court erred in denying the Cross Motion as to the Sandel Parties' claims is moot. The Cashman Parties have not shown that the trial court abused its discretion in granting CML interpleader relief or in awarding CML $41,437.50 in reasonable attorney's fees to be paid out of the funds in the registry of the court. The grounds expressly presented in the Fourth Motion are sufficiently broad to encompass Armour's promissory-estoppel claim. The Cashman Sisters have not shown that if the attempt to reserve or except the Purported Royalty was void or invalid, title to the Purported Royalty would stay with the Assignors rather than pass to Sandel Energy. Because the Cashman Parties have not shown that the trial court erred in rendering its final judgment, we affirm that judgment.

/s/ Randy Wilson
   Justice

Panel consists of Justices Wise, Poissant, and Wilson.

27